IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ASKIA WASHINGTON,

                Defendant.

CRIMINAL ACTION
NO. 13-171-2

## OPINION

**Slomsky, J.**                                                                 **June 30, 2014**

## I.     INTRODUCTION

Before the Court is Defendant's Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution.  (Doc. No. 126.)  In the Motion, Askia Washington ("Defendant" or "Washington") asserts that the Philadelphia District Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the United States Attorney's Office for the Eastern District of Pennsylvania have a discriminatory law enforcement policy or practice of targeting African American and Latino individuals for sting operations involving robberies of phony drug stash houses.  (Id. at ¶ 1.)  Defendant believes that he was arrested and indicted as a result of one of these allegedly discriminatory sting operations.  (Id.)

In his Motion, Defendant seeks disclosure of records pertaining to similar sting operations that took place in the Eastern District of Pennsylvania and the District of New Jersey from 2009 to the present.  (Id. at ¶ 2.)  The Government filed a Response in Opposition.  (Doc. No. 127.)  On May 13, 2014, the Court held a hearing on the Motion, and it is ripe for disposition.[1]

---

[1] In rendering this Opinion, the Court has considered the following: Defendant's pro se letter

## II.    BACKGROUND

In this case, Defendant is charged with the following crimes:

- Count I – conspiracy to commit attempted robbery which interferes with interstate commerce, in violation of the Hobbs Act, 18 U.S.C. §§ 1951(a), (b)(1) and (b)(3);

- Count II – attempt to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 1951(a);

- Count III – conspiracy to attempt to possess a controlled substance, cocaine, with the intent to distribute, in violation of 21 U.S.C. § 846;

- Count IV – attempt to possess, and aiding and abetting the attempt to possess, a controlled substance, cocaine, with the intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 846;

- Count V – knowingly carrying, and aiding and abetting the carrying of, a firearm during and in relation to a crime of violence and to a drug trafficking crime, in violation of 18 U.S.C. § 2 and 18 U.S.C. §§ 924(c);

- Count VI – being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

(Doc. No. 24.)

On March 15, 2013, Defendant and three other men were arrested in an ATF sting operation as they attempted to commit a home invasion and robbery of what they believed to be

---

with attached exhibits (Doc. No. 121), Defendant's Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution (Doc. No. 126), the Government's Response in Opposition (Doc. No. 127), the arguments made by counsel for the parties at a hearing on the Motion held on May 13, 2014, and supplemental documents provided by Defendant at the hearing (Doc. No. 130).

a cocaine stash house in Philadelphia.  (Doc. No. 127 at 1.)  On April 11, 2013, all four defendants were indicted, and three have entered guilty pleas.  (Id.)  Defendant Washington intends to pursue a jury trial.  (Id.)

On April 27, 2014, Defendant filed the Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution.  (Doc. No. 126.)  According to Defendant, it has become common practice for federal agents and prosecutors in Philadelphia to create fictitious plans to commit armed robberies of homes and to lead defendants like him to falsely believe that the homes contain illegal drugs.  (Id. at ¶ 1.)  As part of these sting operations, a confidential informant and undercover ATF agent purport to have knowledge of lightly guarded stash houses where large quantities of drugs are stored.  (Id.)  In this case, Washington's co-defendant, Dwight Berry, met with a confidential informant and expressed an interest in robbing a cocaine stash house.  Berry subsequently approached Washington about getting involved. (N.T. May 13, 2014 at 19:9-12.)  Defendant alleges that the Government routinely targets African Americans and Latinos for these sting operations and that his arrest and indictment resulted from this practice of racial profiling and selective prosecution.  (Id.)

In his Motion for Discovery, Defendant requests disclosure of all phony stash house robbery cases involving confidential informants and undercover agents within the Eastern District of Pennsylvania and the District of New Jersey from 2009 to the present.  (Id. at ¶ 2.) Defendant seeks this information in order to prepare a motion to dismiss the indictment on the basis of racial profiling and/or selective prosecution of racial minorities by the ATF Office in Philadelphia, in conjunction with the local U.S. Attorney's Office.  (Id. at 1.)  The Government opposes the Motion and argues that Defendant's discovery request should be denied.  (Doc. No. 127.)  For reasons that follow, the Court will deny Defendant's Motion.

**III.     ANALYSIS**

In his Motion, Defendant requests an evidentiary hearing on the issue of racial profiling and/or selective prosecution with respect to sting operations involving fictitious stash house robberies, as well as the production of the following discovery items:

- A list by case name, number and the race of each defendant of all phony stash house robbery cases brought by the United States Attorney's Office for the Eastern District of Pennsylvania [and the District of New Jersey] from 2009 to the present based on investigations conducted by ATF or any other federal law enforcement agency, and any documents that show that the information stated in paragraph 4 [of the Motion] is incorrect.

- For each such case listed in response to section "a" above, a statement of prior [c]riminal contact each investigating federal agency had with each defendant prior to initiating every fictitious stash house robbery.  (If all such information for a particular case is contained in the criminal complaint, provision of a copy of the complaint would be a sufficient response).

- The statutory or regulatory authority for ATF or any other federal law enforcement agency to instigate and/or pursue fictitious stash house robbery cases involving any pretext of illegal drugs (e.g. heroin, cocaine, crack, ecstasy, methamphetamine, etc.), or any decision by any federal agency, the Justice Department or the White House to authorize ATF or any other federal law enforcement agency to pursue such cases in the Eastern District of Pennsylvania [and the District of New Jersey].

- All national and Philadelphia Field Office ATF manuals, circulars, field notes, correspondence or any other material which discuss "stings", "reverse stings", "phony stash house rip-offs or robberies" or entrapment operations, including protocols and/or directions to agents and to confidential informants regarding how to conduct such operations, how to determine which persons to pursue as potential targets or ultimate defendants, how to ensure that the targets do not seek to quit or leave before an arrest can be made, and how to ensure that the agents are not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

- All documents that contain information on whether and how supervisors and managers of the Philadelphia Area ATF and other federal law enforcement agencies involved in phony stash house robbery cases sought to determine whether or not its agents and informants were targeting persons on the basis of their race, color, ancestry or national origin for these phony stash house robbery cases, and what actions did the Philadelphia Area ATF (i.e., operating in the Eastern District of Pennsylvania [and the District of New Jersey]) or other federal

law enforcement agency supervisors and managers took [sic] to ensure that agents and/or informants were not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

- The number of paid and unpaid confidential informants utilized by the Philadelphia Area ATF from 2009 to the present and the number of those confidential informants who had access to non-African American or persons of non-African descent who could be targeted for fictitious stash house robbery cases.

- The factual basis in each case cited in paragraph 4 and cases produced in response to the above and the cases produced in response to paragraph 10a regarding decisions made to pursue or initiate an investigation against any of the individuals listed as defendants in these cases.

- All documents containing instructions given to Assistant United States Attorneys since 2009 regarding the responsibilities of Assistant United States Attorney to ensure that defendants in cases brought by the Office of the United States Attorney for the Eastern District of Pennsylvania [and the District of New Jersey] have not been targeted due to their race, color, ancestry or national origin and specifically that those persons who are defendants in phony stash house cases in which ATF was the investigatory agency have not been targeted due to their race, color, ancestry or national origin and that such prosecutions have not been brought with any discriminatory intent on the basis of the defendant's race, color, ancestry or national origin.

- All documents that contain information . . . regarding all duties and responsibilities of Assistant United States Attorneys for the Eastern District of Pennsylvania [and the District of New Jersey] to ensure and/or check to determine that defendants . . . have not been targeted due to their race, color, ancestry or national origin and . . . that [phony stash house cases] have not been brought with any discriminatory intent on the basis of the defendant's race, color, ancestry or national origin.

(Doc. No. 126 at ¶ 10.)

The Supreme Court's decision in United States v. Armstrong, 517 U.S. 456 (1996) articulates the standard that Defendant must meet in order to obtain the discovery materials he believes will substantiate his selective enforcement claim.[2]  Given the "broad discretion" that

---

[2] While Defendant refers to "selective prosecution" in his Motion, he actually complains of racial profiling or "selective law enforcement."  However, "the same analysis governs both types of claims: a defendant seeking discovery on a selective enforcement claim must meet the same

United States Attorneys retain to enforce federal criminal laws, "[t]he presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." Id. at 464 (internal quotations omitted). However, the Supreme Court explained that:

> Of course, a prosecutor's discretion is "subject to constitutional constraints." One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification." A defendant may demonstrate that the administration of a criminal law is "directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive" that the system of prosecution amounts to "a practical denial" of equal protection of the law.

Id. at 464-65 (internal quotations omitted). Due to a "concern not to unnecessarily impair the performance of a core executive constitutional function," a criminal defendant "must present 'clear evidence to the contrary'" in order to overcome the presumption that a prosecutor has not violated equal protection. Id. at 465.

According to the Supreme Court, "[t]he justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." Id. at 468. The Court in Armstrong decided what is necessary to overcome "the presumption of regularity" that supports prosecutorial decisions:

> The claimant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted.

Id. at 465-66 (internal quotations omitted). This requires a criminal defendant to make "a credible showing of different treatment of similarly situated persons." Id. at 470.

---

'ordinary equal protection standards' that Armstrong outlines for selective prosecution claims." United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002).

Following <u>Armstrong</u>, the Supreme Court further explained that "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants."  <u>United States v. Bass</u>, 536 U.S. 862, 864 (2002).  In <u>Bass</u>, rather than submit evidence that similarly situated persons were treated differently, the defendant presented nationwide statistics that demonstrated that the United States charges blacks with a death-eligible offense more than twice as often as it charges whites and that the United States enters into plea bargains more frequently with whites than it does with blacks.  <u>Id.</u> at 863.  The Court held that these "raw statistics" were insufficient to establish a discriminatory effect under <u>Armstrong</u>.  Likewise, Defendant in this case cannot meet <u>Armstrong's</u> "rigorous standard for discovery."

In support of his discovery motion, Defendant asserts that from 2009 to the present, the Government has brought at least four phony stash house robbery cases against twenty individuals, all of whom are African American.[3]  (Doc. No. 126 at ¶ 5.)  Defendant also submitted a pro se filing which includes the following: various news articles discussing the Government's use of these types of sting operations; filings in phony stash house robbery cases from outside the Third Circuit; and Department of Justice policy guidelines regarding the impermissibility of racial profiling by federal law enforcement agencies.  (Doc. No. 121.)  The Government argues that this evidence is insufficient to meet the <u>Armstrong</u> standard, and Defendant is therefore not entitled to discovery.  (Doc. No. 127.)  The Court agrees.

---

[3] The cases cited by Defendant are: <u>United States v. Weems & Smith</u>, 09-cr-708 (E.D. Pa.) (Slomsky, J.); <u>United States v. Bryant, et al.</u>, 12-cr-346 (E.D. Pa.) (Dalzell, J.); <u>United States v. Whitfield, et al.</u>, 12-cr-418 (E.D. Pa.) (Sanchez, J.); <u>United States v. Berry, et al.</u>, 13-cr-171 (E.D. Pa.) (Slomsky, J.).

Phony stash house robbery cases first received national attention after USA Today published an in-depth report about this type of sting operation in June 2013.[4]  Shortly thereafter, a federal judge in the Northern District of Illinois granted discovery motions in two of these cases, after finding that the defendants had made a strong showing of potential Government bias. United States v. Brown, et al., 12-cr-632, Doc. No. 153 (N.D. Ill. July 31, 2013); United States v. Williams, et al., 12-cr-887, Doc. No. 70 (N.D. Ill. July 31, 2013).  In reaching this decision, however, the court did not analyze the issue under the applicable Armstrong standard.  It was sufficient for the court in these two cases that since 2011, only minorities had been charged in phony stash house robbery cases within that district.  Id.

Another judge in the same district granted the defendants' discovery motion because "[a]n examination of the limited information available to Defendants indicates that since 2006, the prosecution in this District has brought at least twenty purported phony stash house cases, with the overwhelming majority of the defendants named being individuals of color."  United States v. Davis, et al., 13-cr-63, Doc. No. 124 (N.D. Ill. Oct. 30, 2013).[5]  The court reasoned that this evidence was sufficient to make a threshold showing that the Government declined to prosecute similarly situated suspects of other races.  Id.  In granting the discovery motion, the court did not address whether the defendants had satisfied the second prong of Armstrong by demonstrating that the sting operation was motivated by a discriminatory purpose.

In another phony stash house robbery case, a district court judge largely denied the defendant's discovery request after conducting a full Armstrong analysis.  United States v.

---

[4] Brad Heath, ATF uses fake drugs, big bucks to snare suspects, USA Today, June 28, 2013, available at http://www.usatoday.com/story/news/nation/2013/06/27/atf-stash-houses-sting-usa today-investigation/2457109/.

[5] The Government filed an interlocutory appeal which is pending before the Seventh Circuit.

Alexander, No. 11-148-1, 2013 WL 6491476 (N.D. Ill. Dec. 10, 2013).  The court found that the defendant failed to make a credible showing of discriminatory effect and also failed to provide evidence of discriminatory intent.  Id. at *4-5.  In determining that the defendant did not make a credible showing of a discriminatory effect, the court explained:

> Alexander's analysis of the 17 cases he studied shows that approximately 75% of the defendants prosecuted in those cases are African American.  The data he offers, however, says nothing about whether the ATF or the United States Attorney chose not to conduct or prosecute stash-house robbery sting cases for similarly situated individuals of another race.  The Supreme Court and the Seventh Circuit have repeatedly found that this type of evidence fails to fulfill the discriminatory effect prong of the Armstrong test.

Id. at *4 (citations omitted).  Although the defendant failed to meet Armstrong's rigorous standard, the district court judge nevertheless ordered the Government to produce limited discovery in the case.  Id. at *5.  Following this approach, a federal judge in the District of Maryland similarly ordered the production of limited discovery, despite finding that the defendants had failed to make the necessary showing of discriminatory effect and discriminatory intent under Armstrong.  United States v. Hare, No. 13-650, 2014 WL 1573545 (D. Md. Apr. 17, 2014).

As noted above, Armstrong sets forth the criteria required for obtaining discovery on selective enforcement.  The Court is bound to follow Armstrong and may not deviate from the Supreme Court's standard.  The decisions listed above are not persuasive for the following reasons.  In two cases, the district court did not conduct an Armstrong analysis.  In another case, the district court did not complete a full inquiry and only considered the first prong of Armstrong.  Some of the courts simply relied on "raw statistics regarding overall charges," and two district courts ordered discovery, despite finding that defendants failed to satisfy Armstrong's rigorous standard.

Unlike the Northern District of Illinois, this Court has not had the occasion to rule in a phony stash house robbery case on a defendant's pre-trial motion seeking discovery to support a selective enforcement claim.  On June 27, 2014, however, another judge of this Court issued an Opinion in United States v. Whitfield, et al., 12-cr-418, Doc. No. 377 (E.D. Pa. June 27, 2014), in which the defendants sought post-trial discovery on the issue of selective enforcement. Although the discovery motion was untimely filed after the defendants were convicted, the Court still held that the defendants were not entitled to discovery because they could not satisfy the requirements of Armstrong.  There, the defendants identified six phony stash house prosecutions pursued in this district since 2009 in which all of the defendants were African American.  The Court held:

> Because Defendants' data focuses only on the racial composition of those targeted in phony stash house robbery stings and says nothing about the existence of similarly situated individuals of another race who could have been targeted but were not, the data is insufficient to satisfy Defendants' burden to produce some evidence of discriminatory effect.

Whitfield, 12-cr-418, Doc. No. 377 at 17 (citations omitted).  Defendant Washington's present discovery motion fails for the same reason.

Here, the only evidence Defendant submitted relevant to sting operations in this district is the fact that since 2009, the Government has brought at least four phony stash house robbery cases, in which only African Americans were charged.  (Doc. No. 126 at ¶ 5.)  The Supreme Court has clarified that "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants."  Bass, 536 U.S. at 864.  As the district court held in Alexander, "this type of evidence fails to fulfill the discriminatory effect prong of the Armstrong test."  2013 WL 6491476 at *4.

Furthermore, the defense has acknowledged that it cannot satisfy <u>Armstrong's</u> first prong.

On May 13, 2014, the Court held a hearing, at which the following exchange took place:

> THE COURT: All right. Now, I have to follow the law, as sensitive as these matters are. And in <u>Armstrong</u>, you have to present evidence that similarly situated persons were treated differently. In other words, it's not enough under <u>Armstrong</u> or even <u>Bass</u> or other cases to present a—a list of any number of cases in which the defendants were African American and were subject to these kinds of sting operations. You have to go beyond that in order to get discovery, and you have to show that other similarly situated persons who were not African Americans were treated differently. And what evidence of that is there in the record?
>
> [DEFENSE COUNSEL]: In this record, Your Honor, there—there—there is none. There's no evidence in this record on this case other than what we have regarding the affidavits that were submitted; the indictment, of course; and the tapes that we have from, you know, these recordings. The problem, Your Honor, is that my client, like many of the other cases that we've cited and are relying on for a persuasive impact, were discriminated against, if not intentionally, Your Honor, by practice and policy.

(N.T. May 13, 2014 at 17:19-18:19.)

Without presenting evidence that similarly situated individuals were not targeted for these sting operations, Defendant cannot meet <u>Armstrong's</u> rigorous standard to obtain discovery. Moreover, <u>Armstrong</u> also requires a showing of a discriminatory purpose. It is not sufficient for Defendant to allege generally that he may have been unintentionally discriminated against by a Government practice or policy.[6] "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute" and "the decision to prosecute is particularly ill-suited to

---

[6] It is also worth noting that in this case, neither the confidential informant nor the ATF agent initiated contact with Defendant. Rather, Washington's co-defendant, Dwight Berry, recruited Washington to rob the alleged stash house. (N.T. May 13, 2014 at 19:9-12.)

judicial review." <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985) (citations omitted). Therefore, it is only under limited circumstances, as annunciated in <u>Armstrong</u>, that a court will afford criminal defendants an opportunity to challenge the Government's law enforcement or prosecutorial decisions.  This case is not one of those situations.  Defendant has not demonstrated that the Government's use of fictitious stash house sting operations has both a discriminatory effect and a discriminatory purpose.  Thus, he cannot meet <u>Armstrong's</u> rigorous burden and is not entitled to discovery.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution.  An appropriate Order follows.