IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | CRIMINAL ACTION |
| v. | : : | |
| ASKIA WASHINGTON | : : | NUMBER 13-171-2 |

MOTION FOR DISCOVERY PERTAINING TO CLAIM OF
SELECTIVE ENFORCEMENT

TO THE HONORABLE JOEL H. SLOMSKY, JUDGE OF THE SAID COURT:

Defendant ASKIA WASHINGTON, by his attorney, Mark S. Greenberg, Esquire, respectfully represents:

1.  Washington was convicted of Hobbs Act robbery and drug distribution offenses stemming from a fictitious stash house robbery sting operation that was orchestrated by the Bureau of Alcohol, Tobacco and Firearms ("ATF") in Philadelphia from February to March of 2013. Prior to trial, Washington, who is African-American, filed a Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution. D.E. # 126. In support of his discovery motion, Washington asserted that from 2009 to the date the motion was filed in 2014, the government had brought, in the Eastern District of Pennsylvania, at least four fictitious stash house cases against twenty individuals, all of whom were African Americans[1]. D.E. # 135 at 7. Washington alleged that ATF and the

---

[1] In addition to the instant case involving four African-American defendants, the cases cited by Washington were United States v. Weems & Smith, 09–cr–708 (E. D. Pa.) (Slomsky, J.); United States v. Bryant, et al., 12–cr–346 (E. D. Pa.) (Dalzell, J.); United States v. Whitfield, et al., 12–cr–418 (E. D. Pa.) (Sanchez, J.).

1

United States Attorney's Office, Eastern District of Pennsylvania, have a discriminatory law enforcement policy or practice of targeting African-American and Latino individuals for sting operations involving robberies of fictitious drug stash houses. Washington alleged that he was arrested and indicted as a result of one of these discriminatory sting operations. Washington's discovery motion sought the disclosure of records pertaining to similar sting operations that took place in the Eastern District of Pennsylvania and the District of New Jersey as of 2009. The government opposed the Motion. App. 75 D.E. # 127.

2. In an Opinion dated June 30, 2014, this Court denied Washington's Motion. D.E. # 135. The Court concluded that Washington's discovery motion failed to allege facts that satisfied the discriminatory effect and intent prongs of the test set forth in United States v. Armstrong, 517 U.S. 456 (1996) and United States v. Bass, 536 U.S. 862 (2002). D.E. # 135 at 10-11. The Court later ordered the government to supply Washington with heavily redacted excerpts of a March 2013 ATF publication entitled "Current Home Invasion Protocols" which set out the some of the factors ATF agents should consider in connection with the investigation of "home invasions."

3. Washington appealed his conviction. The Court of Appeals affirmed the judgment but ordered a limited remand for this Court to reconsider Washington's discovery motion under a more relaxed standard than that promulgated in Amstrong. Specifically, the Court of Appeals held that "motions for discovery seeking information on putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong/Bass* framework." United States v. Washington, 869 F.3d 193, 220 (3d Cir.

2017). Rather, "a district court retains the discretion to conduct limited pretrial inquiry into the challenged law-enforcement practice on a proffer that shows 'some evidence' of discriminatory effect." Id. at 220-221. . . . [A] defendant need not, at the initial stage, provide some evidence of discriminatory intent, or show that (on the effect prong) similarly situated persons of a different race or equal protection classification were not arrested or investigated by law enforcement. Id. at 221.

4. In the instant motion, Washington is prepared to offer "some evidence" that the investigative techniques employed by ATF in stash house robbery stings has the discriminatory effect of unconstitutionally targeting people of color because of their race. If the Court agrees that the proffer is sufficient, Washington requests that the Court order the government to answer the discovery requests made in this motion. These discovery requests, which are preliminary in nature, are tailored to address the issue of whether Washington can show "clear evidence" of discriminatory effect and, to some degree, discriminatory intent on the part of ATF to target people of color in stash house robbery sting investigations. Washington, 869 F.3d at 216.

5. If it turns out that the disclosed discovery is relevant to a showing of "clear evidence" of discriminatory effect and, to some degree, discriminatory intent, Washington asks leave to file additional discovery requests that go to the issue of whether (a) ATF did not arrest or investigate similarly situated individuals of a different race and whether (b) ATF agents acted with discriminatory intent in targeting Washington because of his race.

6. Washington asserts that the four fictitious ATF stash house robbery stings involving 20 African-Americans he identified in his original discovery motion constitutes "some

evidence" of discriminatory effect sufficient to advance his discovery claim. Indeed, the Court indicated as much in the January 29th telephone conference conducted with counsel. Since that initial proffer, Washington has contacted the Federal Public Defenders comprising of the Eastern, Middle and Western Districts of Pennsylvania, the District of Delaware and the District of New Jersey in an effort to identify additional cases involving fictitious ATF stash house robbery stings.

7. By letter dated March 1, 2018, Richard Coughlin, Esquire, the Federal Public Defender for the District of New Jersey, has identified five fictitious stash house robbery prosecutions arising from ATF investigations filed in the District of New Jersey since 2011[2]. Mr. Coughlin reports that all fourteen defendants are individuals of color: twelve African-Americans and two Hispanics. Mr. Coughlin's letter is attached as Exhibit 1. Washington has uncovered an additional fictitious stash house robbery prosecution in New Jersey that involves three African-Americans[3].

8. Lisa Freeland, the Federal Public Defender for the Western District of Pennsylvania, reports by email that she is unaware of any stash house robbery prosecutions in her district. Edwin Bostic, the Federal Public Defender for the District of Delaware, echos in a telephone conversation a similar absence of fictitious stash house robbery prosecutions in his district. Leigh Skipper, Federal Community Defender for the Eastern of Pennsylvania of Pennsylvania and Lori J. Ulrich, Trial Unit Chief for the Federal Public

---

[2] United States v. Ralph Dennis, 12-734; United States v. Lewis Brown, 11-545, 12-43, 12-152; United States v. Tony Davis, 13-222; United States v. Alexander Morales, 14-290; United States v. Cordero Hodge, 15-101.

[3] United States v. Sean Forman (Robert Smith), 14-152.

      Defender, Middle District of Pennsylvania, have acknowledged receiving Washington's inquiry but have not yet reported any findings. It should be noted that there very well may be stash house robbery stings that these Federal Defenders are unaware of in their districts.

9. Thus, Washington has identified a total of 10 fictitious stash house robbery stings orchestrated by ATF in the Eastern District of Pennsylvania and the District of New Jersey. One-Hundred percent of the 37 defendants in these prosecutions are individuals of color: 35 African-Americans and two Hispanics.

10. Attached as Exhibit 2 are 2016 United States Census Quick Facts for New Jersey, Delaware and Pennsylvania and 2016 United States Census Quick Facts for the eight counties comprising the Eastern District of Pennsylvania. These census figures provide the racial composition of New Jersey and the Eastern District of Pennsylvania within two years of the date of the instant sting investigation.

11. In New Jersey, 55.8% of the population is white (not Hispanic); 15% is Black or African-American and 20.0% are Hispanic. In Philadelphia County, the largest county in the Eastern District of Pennsylvania, 34.9% of the population is white (not Hispanic); 44.2% is Black or African-American and 14.4% are Hispanic. The demographic in the remaining seven counties comprising the Eastern District of Pennsylvania is overwhelmingly white.

12. Given that all of the ATF stash house sting prosecutions Washington has identified in the Eastern District of Pennsylvania and the District of New Jersey involve people of color, Washington has shown "some evidence" of discriminatory effect in this type of stash

house sting investigation[4]. Accordingly, Washington requests that the government supply the following information:

13. A list by case name and number of each defendant in every stash house robbery sting conducted by ATF from 2009 until 2014 that has been prosecuted, either by indictment of information, in the Eastern, Middle and Western Districts of Pennsylvania, the District of New Jersey and the District of Delaware;

14. The race of each defendant;

15. Whether informants were used in the investigations that led to the prosecutions and, if so, the race of the informant;

16. Whether the informant initiated contact with the defendant or the defendant initiated contact with the informant;

17. If records exist, the following information pertaining to ATF sting investigations between 2009 and 2014 that did **not** result in arrest or prosecution:

- the race of the individual investigated ("target");

- the race of the informant who participated in the investigation of the target;

- whether the informant initiated contact with the target or the target initiated contact with the informant;

- the reason, if known, why the target was not arrested;

---

[4]During the telephone conference, the government represented that it would reach out to the U.S. Attorney's Offices in the Third Circuit to get the universe of stash house sting prosecutions in the Third Circuit since 2009. As of the filing of the instant motion, this information has not been disclosed to counsel, possibly due to the time constraints of such an endeavor. If for some reason the Court does not believe that Washington's proffer meets the "some evidence" standard of discriminatory effect, Washington asks leave to supplement his proffer when the government does disclose this information.

18. This limited request is an appropriate preliminary and "measured" first step in the discovery process. Washington's request is designed to identify the universe of ATF stash house robbery sting investigations in the Third Circuit between 2009 thru 2014 and the races of the informants, the defendants and the targets who were not arrested. This information goes to the very heart of a selective enforcement claim based on unconstitutional racial profiling and sheds light on the relevant issue of whether similarly situated individuals of a different race were not arrested. This information, one disclosed, will be relevant in determining whether further discovery requests are appropriate. The information requested should be readily available to the U.S. Attorney's Offices in the Third Circuit, which are privy to the nature of their prosecutions and ATF, which is privy to the nature of its investigations . <u>Washington</u>, 869 F.3d at 220 ("we agree with a general approach of taking 'measured steps' over the course of discovery").

19. Washington is not requesting the identity of any informant or ATF agent, nor any information that could jeopardize the safety of informants, ATF agents or the integrity of investigations. Likewise, Washington is not, at this time, asking for any additional ATF materials regarding stash house robbery sting protocols. Nor is Washington asking for any information that touches on prosecutorial discretion. This discovery request is a laser focused first step toward the determination of whether Washington can ultimately meet the "clear evidence" standard of discriminatory effect and intent.

20. If the disclosed discovery turns out to be relevant to whether there is "clear evidence" of discriminatory effect, Washington requests leave to file additional discovery requests that drill down deeper on the twin issues of whether (a) ATF did not arrest or investigate

similarly situated individuals of a different race and whether (b) ATF agents acted with discriminatory intent in targeting Washington because of his race. This will be a second measured step on the road a fair determination of Washington's selective enforcement claim.

WHEREFORE, Washington respectfully requests that the Court grant the instant discovery motion for the reasons stated herein.

                Respectfully submitted,

                /s/ Mark S. Greenberg

                _____
                MARK S. GREENBERG, ESQUIRE
                Attorney for Defendant