IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | CRIMINAL ACTION |
| v. | : : | |
| ASKIA WASHINGTON | : : | NUMBER 13-171-2 |

## THIRD MOTION FOR DISCOVERY PERTAINING TO CLAIM OF SELECTIVE ENFORCEMENT

TO THE HONORABLE JOEL H. SLOMSKY, JUDGE OF THE SAID COURT:

Defendant ASKIA WASHINGTON, by his attorney, Mark S. Greenberg, Esquire, respectfully represents:

1. This discovery request is the third in a series of "measured steps" designed to determine whether Washington was unconstitutionally targeted for investigation by the Bureau of Alcohol, Tobacco and Firearms ("ATF") in this fictitious stash house robbery sting because of his race.

2. The first discovery disclosure revealed that between 2009 and 2014, 100% of the 62 criminal defendants arrested in the 17 stash house stings that resulted in prosecution in this circuit were persons of color, and that 97% (128 out of 132) of individuals targeted were likewise individuals of color. See Government's Response to Defendant Askia Washington's Second Motion for Discovery Pertaining to Claim of Selective Enforcement ("First Government Disclosure") [D.E. # 358] at 5, n.1.

3. The second discovery disclosure, which prompts the instant request, reveals that before Washington's sentencing, a special agent, a contractor and "others" employed at the ATF

1

field office in Philadelphia, engaged in racist activity and acts evincing Islamophobia for approximately one year. This behavior was addressed by ATF management through "a verbal counseling session." Based on these disclosures, Washington requests that the Court enter an Order

- directing the government to identify whether case agent John Bowman and/or undercover agent Patrick Edwards were one of the "others" who engaged in the racist/Islamophobic activity revealed in the government's second discovery disclosure, and

- in light of this racist/Islamophobic activity so close in time to Washington's arrest and prosecution, an Order directing the government to disclose all information in possession of the ATF field office in Philadelphia which shows, between 2009 and 2014, the results of investigations of personnel of that office who may have uttered, either verbally or in writing, words or acts that reasonably can be construed to demonstrate racial bias, discrimination, or profiling.

4. The Court by now is intimately familiar with the background of this case, having presided over pretrial motion practice, trial, post-trial motion practice, sentencing and post-appeal discovery motion practice designed to determine whether Washington was targeted in this stash house robbery sting operation because of his race. In summary, Washington was convicted of Hobbs Act robbery and drug distribution offenses stemming from a fictitious stash house robbery sting operation that was orchestrated by the ATF field office in Philadelphia from February to March of 2013. Prior to trial in June 2015, Washington, who is African-American, filed a Motion for Discovery and Evidentiary Hearing on the

        Issue of Racial Profiling/Selective Prosecution. D.E. # 126. Washington alleged that ATF and the United States Attorney's Office, Eastern District of Pennsylvania targeted African-American and Latino individuals for sting operations involving robberies of fictitious drug stash houses because of their race. Washington alleged that he was arrested and indicted as a result of one of these discriminatory sting operations. Washington's discovery motion sought the disclosure of records pertaining to similar sting operations that took place in the Eastern District of Pennsylvania and the District of New Jersey as of 2009. The government opposed the Motion. D.E. # 127.

5.    In an Opinion dated June 30, 2014, this Court denied Washington's Motion. D.E. # 135. The Court concluded that Washington's discovery motion failed to allege facts that satisfied the discriminatory effect and intent prongs of the test set forth in United States v. Armstrong, 517 U.S. 456 (1996) and United States v. Bass, 536 U.S. 862 (2002). D.E. # 135 at 10-11.

6.    Washington appealed his conviction. The Court of Appeals affirmed the judgment but ordered a limited remand for this Court to reconsider Washington's discovery motion under a more relaxed standard than that promulgated in Amstrong. Specifically, the Court of Appeals held that "motions for discovery seeking information on putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong/Bass* framework." United States v. Washington, 869 F.3d 193, 220 (3d Cir. 2017).  Rather, "a district court retains the discretion to conduct limited pretrial inquiry into the challenged law-enforcement practice on a proffer that shows 'some evidence' of discriminatory effect." Id. at 220-221. . . . [A] defendant need not, at the initial stage,

provide some evidence of discriminatory intent, or show that (on the effect prong) similarly situated persons of a different race or equal protection classification were not arrested or investigated by law enforcement. Id. at 221.

7. In an Order dated August 10, 2018[1], this Court directed the government to provide Washington with the following information pertaining to ATF stash house sting investigations in the Third Circuit[2] between 2009 and 2014:

- in investigations which resulted in prosecution, (A) the race of the defendant and the informant and (B) which of the two, defendant or informant, initiated the contact.

- in investigations which did not result in prosecution, (A) the race of the defendant and the informant; (B) which of the two initiated the contact; and ( C) why the target was not prosecuted.

8. The government complied with the Court's directive and supplied Washington with a CD containing the relevant discovery information. In the words of the government, the discovery revealed that between 2009-2014, "there were in fact a total of 40 investigations, 17 of which resulted in charges against 62 people (57 African-American and 5 Hispanic). The total of identified suspects was 132; of the 70 identified persons who were not prosecuted, 57 were African-American, 8 were Hispanic, 4 were white, and 1 was 'Indian.'" First Government Disclosure [D.E. # 358] at 5, n.1.

9. Based on this disclosure, Washington filed a second discovery motion which, in large

---

[1] D.E. # 327.

[2] Excluding the Virgin Islands.

measure, was granted by the Court. D.E. # 365. Relevant to this third discovery request is the second of the Court's four directives:

> Any information in possession of the investigating agencies in the 40 Stash House Robbery Investigations which show that any of the case agents primarily in charge of these Investigations or any undercover agents involved in any of these Investigations uttered, either verbally or in writing, words that reasonably can be construed to demonstrate racial bias, discrimination, or profiling[.]

10. Attached as exhibits are the government's five-page letter response to the Court's Order and two emails government counsel sent Washington in response to his questions flowing from the letter. Because the government's letter response is covered by a protective order, Washington will file the exhibits under seal.

10. The relevant portion[3] of the government's response can be found in section 2a of the letter and reads as follows:

> a. Agent J. M. R.[4] was involved in Operation G. R. (New Jersey). Years later, an internal affairs investigation was opened on November 2, 2016, based in part on an allegation by a contractor, A. T.[5], that while both were employed in the ATF field office in Philadelphia, R. made recurring derogatory comments regarding people of Islamic faith, and on one occasion took a Quran from T.'s work space and played a game of "hot potato" with it <u>with other interns</u> (an alleged incident that she did not herself witness). For his part, R. said that he

---

[3]Washington agrees with the government that the activity described in paragraph 2b is too remote in time to be relevant.

[4]In an email, Agent J.M.R. is identified as an Italian-American.

[5]In an email, contractor A.T. is identified as an Pakistani-American.

helped get T. her position, and considered her a friend. He said that matters in the group turned sour when T. competed with another employee for a position that neither ultimately received. R. said that he joked with T. <u>and others</u> about race/religion/ethnicity, and T. even initiated some of the "jokes" that he thought might be insensitive to Muslims. R. shared a copy of a photo text he received from T. that in fact presents an effort at humor that is overtly racist.

Following an investigation, no disciplinary action was taken. The matter was referred to management. In 2017, the leadership of the Philadelphia Field Division met with each employee and conducted a verbal counseling session. A supervisor wrote, "I advised each of the employees of ATF's policy of zero tolerance as it relates to any kind of harassment, intimidation, or reprisals with any of their co-workers. I further reminded them that ATF, and in particular the Philadelphia Field Division will not accept any deviation from the policy and that we not only expect a professional atmosphere but demand it. I cautioned each employee that any future issues relating to workplace harassment of any sort will be dealt with severely up to and including suspension."

<u>Government letter dated January 16, 2020</u> at 2-3 (emphasis supplied). As for the duration of this conduct, the government, in an email dated the same date as the letter, wrote: "Ms. T. began work as a contractor at ATF on October 5, 2015. She made her complaint on October 27, 2016. She cited events that took place throughout that period. . . . . [S]he said [the text message was sent] before May 2016."

11. The second prong in a selective enforcement claim requires Washington to show "clear

evidence" of "discriminatory intent (the latter is sometimes referred to as 'discriminatory purpose')" on the part of the investigating agencies. United States v. Washington, 869 F.3d 193, 214 (3d Cir. 2017). The instant third discovery request is designed to drill down on whether the Bowman and Edwards in particular, and the Philadelphia field office of ATF more broadly, acted with discriminatory intent/purpose in investigating Washington. If Bowman and Edwards are one of the "others" who engaged in racist/Islamophobic behavior with J.M.R. and A.T., Washington is one-step closer to developing "clear evidence" of discriminatory intent/purpose. If Washington can show that the Philadelphia ATF field office, that investigated Washington and in which Bowman and Edwards worked, was rife with racist activity during the operative period of 2009-2014, he is likewise one-step closer to developing "clear evidence" of discriminatory intent/purpose.

12. Washington's third discovery request is in accordance with the "measured steps" contemplated by the court of appeal's mandate and is more tailored than his other two. Washington's first discovery motion obtained the races of the individuals investigated in these reverse stash house stings in the three states comprising the third circuit between 2009-2014. Washington's second discovery requested evidence of activity that could fairly be characterized as racist that may have been engaged in by the primary agents involved in these investigations. This third request has been further narrowed to the two primary agents instrumental in Washington's arrest and prosecution and the particular field office they worked in and which investigated Washington. In fact, the language in Washington's proposed order mirrors the second paragraph of this Court's discovery

Order[6] but is focused exclusively on the Philadelphia field office of ATF rather than all of the ATF field offices in the Third Circuit. To quote this Court's observation in the second discovery Order, Washington's "goal of establishing a claim of selective enforcement has not receded or stalled." D.E. # 365 at 4. Evidence from this third request will either bring Washington one-step closer to the holy grail of establishing discriminatory intent/purpose or put an end to his valiant quest.

WHEREFORE, Washington respectfully requests that the Court grant the instant discovery motion for the reasons stated herein.

Respectfully submitted,

/s/ Mark S. Greenberg
_____
MARK S. GREENBERG, ESQUIRE
Attorney for Defendant

---

[6] D.E. # 365 at 1.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | CRIMINAL ACTION |
| v. | : : | |
| ASKIA WASHINGTON | : : | NUMBER 13-171-2 |

**ORDER**

AND NOW this            day of                        2020, it is hereby ORDERED and DECREED that the government shall supply defense counsel with the following, if it exists:

- whether either SA John Bowman and/or SA Patrick Edwards were one of the "other[s]" involved in the activity engaged in by J. M. R. and A.T. described in the government's second discovery disclosure dated January 16, 2020;

- any information in possession of the Philadelphia field office of the ATF which tend to show, between 2009 and 2014, that any of its agents, contractors or other personnel uttered, either verbally or in writing, words that reasonably can be construed to demonstrate racial bias/discrimination/profiling.

BY THE COURT:

_____