IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | CRIMINAL ACTION |
| v. | : : | |
| ASKIA WASHINGTON | : : | NUMBER 13-171-2 |

**REPLY TO GOVERNMENT'S RESPONSE TO WASHINGTON'S THIRD MOTION FOR DISCOVERY PERTAINING TO CLAIM OF SELECTIVE ENFORCEMENT**

TO THE HONORABLE JOEL H. SLOMSKY, JUDGE OF THE SAID COURT:

Defendant ASKIA WASHINGTON, by his attorney, Mark S. Greenberg, Esquire, respectfully replies to the government's response to his third discovery motion pertaining to a claim of selective enforcement:

The government urges the Court to halt these discovery proceeding because, in its view, Washington has failed to produce "any evidence" of either the discriminatory effect or intent under the *Armstrong/Bass* test. D.E. # 372 at 13. The government's claim is contrary to the Court's findings in its second Order regarding what the discovery has revealed to date in connection with the discriminatory effect prong of the *Armstrong/Bass* test:

> . . . the statistics revealed by [Washington's] initial discovery request are compelling: nearly ninety-seven percent of the targets of fictitious stash house robbery investigations in the Third Circuit from 2009 to 2014 were persons of color. (Doc. No. 358 at 5.) Given the racial disparity, additional discovery is warranted on the issue of discriminatory intent.

D.E. # 365 at 4-5.

In addition, Washington has demonstrated that none of the four whites investigated in these stash house stings were arrested or prosecuted, a fact the government concedes in its second

1

and third responses. D.E. # 358 at 15-16; D.E. # 372 at 14. This, in Washington's view, is evidence that similarly situated individuals of a different race were not arrested or prosecuted; a prerequisite to establishing a selective enforcement claim. See Armstrong v. Bass, 517 U.S. at 465-66; United States v. Washington, 869 F.3d at 214.

In its second response, the government claimed that these white individuals were not prosecuted or arrested because they didn't show up at subsequent meetings to continue the plot or participate in the robbery. D.E. # 358 at 15-16. While Washington has no reason to doubt that government counsel has accurately reported what he was told by the ATF agents, it is the Court, in the final analysis, that must make a factual determination as to why the four whites were not arrested or prosecuted. Washington's third motion is designed to assist the Court in making this determination. If it turns out that between 2009-2014, the Philadelphia Field Office of ATF was marbled with racist activity, the very issue the third discovery motion is designed to determine, the Court very well may conclude that there was an improper racial reason why these four whites were not arrested and prosecuted. Unless the Court grants the instant motion, it is prevented from considering this potentially relevant information on similarly situated white individuals.

Contrary to the government's characterization that his third discovery request is "over broad[1]," the instant request focuses exclusively on the Philadelphia Field Office; the very one that investigated Washington[2]. The instant request is triggered by what was uncovered in the

---

[1] Government Response (D.E. # 372) at 11.

[2] According to the ATF's website, there are 13 Field Offices, Field Divisions or Satellite Offices in the Third Circuit. https://www.atf.gov/contact/local-atf-offices?field_geofield_distance%5Bdistance%5D=300&field_geofield_distance%5Bunit%5D=3959&field_geofield_distance%5Borigin%5D=PHILADELPHIA+.

government's second disclosure: racist activity in the Philadelphia Field Office close in time to Washington's investigation and arrest. His instant request is restricted to the years 2009 to 2014; the relevant time-frame at issue.

Finally, Washington has narrowed the scope of each of the three discovery motions. The first discovery request obtained the universe of individuals in the Third Circuit who were investigated in these factitious stash house robberies, including the races of those investigated and the races of the informants involved in the investigations. The second motion narrowed the inquiry to racist conduct that may have been committed by ATF personnel involved in the 40 Third Circuit investigations. This third motion is limited to the particular ATF filed office that investigated Washington and is based on information disclosed in the second request. Washington has been studiously faithful to the "measured steps" paradigm envisioned by the court of appeals in this discovery process.

Washington has no clue what the instant discovery request will uncover; it very well be nothing, in which case his end goal is receding. But, his third request, in light of the dueling accusations of racism between the ATF agent and the contractor as described in the government's second disclosure, very well may uncover evidence of an ATF Philadelphia Field Office rife with racial bias during the time of the instant investigation, in which case Washington is one-step closer to his end goal of establishing a selective enforcement claim under the heightened substantive standards.

WHEREFORE, Washington respectfully requests that the Court grant the instant

---

The instant motion requests relevant information on only one of the 13 ATF office locations in the Third Circuit; the one that investigated Washington.

discovery motion for the reasons stated herein.

                Respectfully submitted,

                    /s/ Mark S. Greenberg

                _____
                MARK S. GREENBERG, ESQUIRE
                Attorney for Defendant