**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


UNITED STATES OF AMERICA           : :          CRIMINAL ACTION

v.                                 : :

ASKIA WASHINGTON                   : :          NUMBER 13-171-2


**REPLY TO GOVERNMENT'S RESPONSE TO WASHINGTON'S THIRD MOTION**
**FOR DISCOVERY PERTAINING TO CLAIM OF SELECTIVE ENFORCEMENT**

TO THE HONORABLE JOEL H. SLOMSKY, JUDGE OF THE SAID COURT:

Defendant ASKIA WASHINGTON, by his attorney, Mark S. Greenberg, Esquire,

respectfully replies to the government's response to his third discovery motion pertaining to a claim

of selective enforcement:

The government urges the Court to halt this discovery proceeding because, in its view,

Washington has failed to produce "any evidence" of either the discriminatory effect or intent

under the *Armstrong/Bass* test. D.E. # 372 at 13. The government's claim is contrary to the

Court's findings in its second Order regarding what the discovery has revealed to date in

connection with the discriminatory effect prong of the *Armstrong/Bass* test:

> . . . the statistics revealed by [Washington's] initial discovery request are compelling:
> nearly ninety-seven percent of the targets of fictitious stash house robbery investigations
> in the Third Circuit from 2009 to 2014 were persons of color. (Doc. No. 358 at 5.) Given
> the racial disparity, additional discovery is warranted on the issue of discriminatory
> intent.

D.E. # 365 at 4-5.

In addition, Washington has demonstrated that none of the four white individuals

investigated in these stash house stings were arrested or prosecuted, a fact the government

concedes in its second and third responses. D.E. # 358 at 15-16; D.E. # 372 at 14. This, in

Washington's view, is evidence that similarly situated individuals of a different race were not

arrested or prosecuted; a prerequisite to establishing a selective enforcement claim. See

Armstrong v. Bass, 517 U.S. at 465-66; United States v. Washington, 869 F.3d at 214.

In its second response, the government claimed that these white individuals were not

prosecuted or arrested because they didn't show up at subsequent meetings to continue the plot or

participate in the robbery. D.E. # 358  at 15-16. While Washington has no reason to doubt that

government counsel has accurately reported what he was told by the ATF agents, it is the Court,

in the final analysis,  that must make a factual determination as to why the four whites were not

arrested or prosecuted. Washington's third motion is designed to assist the Court in making this

determination. If it turns out that between 2009-2014, the Philadelphia Field Office of ATF was

marbled with racist activity, the very issue the third discovery motion is designed to determine,

the Court very well may conclude that there was an improper racial reason why these four whites

were not arrested and prosecuted. Unless the Court grants the instant motion, it is prevented from

considering this potentially relevant information on similarly situated white individuals.

Contrary to the government's characterization that his third discovery request is "over

broad[1]," the instant request focuses exclusively on the Philadelphia Field Office; the very one

that investigated Washington[2]. The instant request is triggered by what was uncovered in the

[1]Government Response (D.E. # 372) at 11.

[2]According to the ATF's website, there are 13 Field Offices, Field Divisions or Satellite Offices in the Third Circuit.
https://www.atf.gov/contact/local-atf-offices?field_geofield_distance%5Bdistance%5D=300&field_geofield_distance%5Bunit%5D=3959&field_geofield_distance%5Borigin%5D=PHILADELPHIA+.

government's second disclosure: racist activity in the Philadelphia Field Office close in time to Washington's investigation and arrest. His instant request is restricted to the years 2009 to 2014; the relevant time-frame at issue.

Finally, Washington has narrowed the scope of each iteration of the three discovery motions. The first discovery request obtained the universe of individuals in the Third Circuit who were investigated in these fictitious stash house robberies, including the races of those investigated and the races of the informants involved in the investigations. The second motion narrowed the inquiry to racist conduct that may have been committed by ATF personnel involved in the 40 Third Circuit investigations. This third motion is limited to the particular ATF filed office that investigated Washington and is based on information disclosed in the second request. Washington has been studiously faithful to the "measured steps" paradigm envisioned by the court of appeals in this discovery process.

Washington has no clue what the instant discovery request will uncover; it very well be nothing, in which case his end goal is receding. But, his third request, in light of the dueling accusations of racism between the ATF agent and the contractor as described in the government's second disclosure, very well may uncover evidence of an ATF Philadelphia Field Office rife with racial bias during the time of the instant investigation, in which case Washington is one-step closer to his end goal of establishing a selective enforcement claim under the heightened substantive standards.

WHEREFORE, Washington respectfully requests that the Court grant the instant

---

The instant motion requests relevant information on only one of the 13 ATF office locations in the Third Circuit; the one that investigated Washington.

discovery motion for the reasons stated herein.

Respectfully submitted,

/s/ Mark S. Greenberg

_____

MARK S. GREENBERG, ESQUIRE
Attorney for Defendant