IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : : | CRIMINAL ACTION |
|---|---|---|
| v. | : : | |
| ASKIA WASHINGTON | : : | NUMBER 13-171-2 |

**MOTION TO VACATE JUDGMENT (D.E. # 287) AND
DISMISS SUPERSEDING INDICTMENT (D.E. # 184)**

TO THE HONORABLE JOEL H. SLOMSKY, JUDGE OF THE SAID COURT:

Defendant ASKIA WASHINGTON, by his attorney, Mark S. Greenberg, Esquire, respectfully represents:

**INTRODUCTION**

1.  A Superseding Indictment charged Washington and three others with crimes involving a plan to rob a fictitious drug stash house of 10 kilograms of "cocaine" in a sting set up by the Philadelphia field office of the ATF. D.E. # 184.

2.  After trial, Washington was found guilty of conspiracy to commit robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a) (Count One); attempted robbery which interferes with interstate commerce, in violation of 18 U.S.C. §§ 1951(a) & 2 (Count Two); conspiracy to possess with the intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A) (Count Three); and attempted possession with the intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) & 2 (Count Four). The jury acquitted Washington of Count Five charging him with a section 924 ( c) firearms violation, which

1

led to the government to withdraw Count Six charging Washington with being a felon in possession of a firearm. Washington was sentenced to a total of 264 months' incarceration. Judgment was entered on June 14, 2016. D.E. # 287.

3. Prior to trial, Washington, who is African-American, filed a Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution. D.E. # 126. In an Opinion dated June 30, 2014, this Court denied Washington's Motion. D.E. # 135. The Court concluded that Washington's discovery motion failed to allege facts that satisfied the discriminatory effect and intent prongs of the test set forth in United States v. Armstrong, 517 U.S. 456 (1996) and United States v. Bass, 536 U.S. 862 (2002). D.E. # 135 at 10-11.

4. Washington appealed his conviction. The Court of Appeals affirmed the judgment but ordered a limited remand for this Court to reconsider Washington's discovery motion under a more relaxed standard than that promulgated in Amstrong. Specifically, the Court of Appeals held that "motions for discovery seeking information on putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong/Bass* framework." United States v. Washington, 869 F.3d 193, 220 (3d Cir. 2017). Rather, "a district court retains the discretion to conduct limited pretrial inquiry into the challenged law-enforcement practice on a proffer that shows 'some evidence' of discriminatory effect." Id. at 220-221. . . . [A] defendant need not, at the initial stage, provide some evidence of discriminatory intent, or show that (on the effect prong) similarly situated persons of a different race or equal protection classification were not arrested or investigated by law enforcement. Id. at 221.

5.  The discovery process contemplated by the court of appeals is now complete[1]. The discovery shows "clear evidence" of discriminatory effect and discriminatory intent on the part of the agents who investigated Washington in this matter. The discovery further shows that similarly situated white individuals were not arrested or prosecuted. Accordingly, Washington now moves to vacate the judgment and dismiss the superseding indictment because he was investigated, arrested and prosecuted because of his race, in violation of the equal protection clause of the United States Constitution. Washington now recounts the substance of the discovery disclosures in support of the instant motion.

**STANDARDS**

6.  In <u>United States v. Armstrong</u>, 517 U.S. 456 (1996), the Supreme Court held that the requirements for a selective prosecution claim draw on "ordinary equal protection standards." The claimant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted. <u>Id</u>. at 465. In <u>United States v. Washington</u>, 869 F.3d 193, 214 (3d Cir. 2017), the Court observed that the standards necessary to establish a selective enforcement claim are the same as those necessary to establish a selective prosecution claim:

> [a] defendant challenging a criminal prosecution at either the law enforcement or

---

[1] The Court denied Washington's request in his third discovery motion for an Order directing the government to disclose all information in possession of the ATF field office in Philadelphia which shows, between 2009 and 2014, the results of investigations of personnel of that office who may have uttered, either verbally or in writing, words or acts that reasonably can be construed to demonstrate racial bias, discrimination, or profiling. D.E. # 375.

prosecution inflection points must provide "clear evidence" of discriminatory effect and discriminatory intent (the latter is sometimes referred to as "discriminatory purpose"). Meeting this standard generally requires evidence that similarly situated individuals of a difference race or classification were not prosecuted, arrested, or otherwise investigated.

**DISCOVERY REVELATIONS**

7. The discovery reveals that between 2009 and 2014, there were a total of 40 stash house sting investigations in this circuit:

    - 97% (128 out of 132) of the individuals investigated in the 40 stash house stings were individuals of color[2];

    - 100% of the 62 criminal defendants arrested in the 17 stash house stings that resulted in prosecution were persons of color[3];

    - 100% of the 26 defendants arrested and prosecuted in connection with the six investigations in the Eastern District of Pennsylvania were African-American[4];

    - 100% of the four white individuals identified in these investigations were not arrested or prosecuted[5];

    - 100% of the individuals targeted by the six white informants were African-

---

[2] Government's Response to Defendant Askia Washington's Second Motion for Discovery Pertaining to Claim of Selective Enforcement, D.E. # 358, at 5, n.1.

[3] Id. Of the 70 individuals who were not prosecuted, 57 were African-American, 8 were Hispanic, 4 were white, and 1 was "Indian".

[4] See Sealed D.E. ## 353 & 354.

[5] D.E. # 358, at 5, n.1.

      Americans[6];

- prior to Washington's sentencing, an Italian-American ATF agent and Pakistani-American contractor who worked at the ATF field office in Philadelphia, admitted to participating in racist and Islamaphobic activity in front of "other" individuals who were not involved in Washington's investigation[7].

**CONCLUSIONS**

8. In the instant case, Washington has presented "clear evidence" of discriminatory effect and discriminatory intent on the part of the agents who investigated Washington in this matter, and that "similarly situated individuals of a difference race or classification were not prosecuted, arrested, or otherwise investigated." In this regard, the numbers are stark and disturbing:

- ". . . the statistics revealed by [Washington's] initial discovery request are compelling: nearly ninety-seven percent of the targets of fictitious stash house robbery investigations in the Third Circuit from 2009 to 2014 were persons of color." Order dated December 6, 2019, D.E. # 365 at 4;

- "Further, in the resulting 62 criminal prosecutions, all 62 defendants were persons of color." Order dated March 20, 2020, D.E. # 376 at 2.

---

[6]The six white informants targeted a total of 13 African-Americans, i.e., approximately 10% of 132 of the individuals investigated. This information is gleaned from the 17-page summary of the investigations which the government submitted to defense counsel as an exhibit. See Sealed D.E. ## 353 & 354. The government appears not to take issue with Washington's summary of the informant information. See D.E. # 358 at 5; 7 ("As for the numbers, defense counsel's summary is generally accurate.")

[7]D.E. # 377.

    Equally disturbing with respect to these investigations is that similarly situated white individuals were treated differently than persons of color:

- persons of color comprised 50%[8] of the individuals who were not arrested or prosecuted whereas 100% of the similarly situated four white individuals were not arrested or prosecuted;

- informants of color targeted individuals of all races whereas 100% the similarly situated six white informants targeted African-Americans exclusively.

9. Against this backdrop is the racist and Islamophobic hijinks that took place at the Philadelphia ATF Field Office before Washington was sentenced between an Italian-American agent and a Pakistani-American contractor. Washington was stymied in his effort to obtain discovery that may have shown racist conduct taking place in the Philadelphia filed office between 2009 and 2014. As a result, Washington is not in a position to say the that the Philadelphia Field Office was rife with racism while it investigated him. Nonetheless, the disparate treatment between persons of color, like Washington, and white individuals targeted in these stash house investigations is reflective of the disturbing conduct engaged in and witnessed by ATF personnel prior to Washington's sentencing. When taken in its entirety, the discovery shows "clear evidence" of discriminatory effect and discriminatory intent on the part of the agents who investigated Washington, and that "similarly situated" white individuals were treated differently because of their race.

WHEREFORE, Washington respectfully moves for an Order granting the instant Motion to

---

[8] 66/132.

Vacate Judgment (D.E. # 287) and Dismiss Superseding Indictment (D.E. # 184)**.**

                                                  Respectfully submitted,

                                                  /s/ Mark S. Greenberg

                                                  _____
                                                  MARK S. GREENBERG, ESQUIRE
                                                  Attorney for Defendant