IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | CRIMINAL NO. 13-171-02 |
| ASKIA WASHINGTON : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO REDUCE SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Askia Washington seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). This motion should be denied, given the fact that he does not present a medical condition that, according to CDC guidance, places him at enhanced risk during the current pandemic.

**I.      Background.**

    **A.      Criminal Conduct.**

Washington was prosecuted in a "stash house sting," in which he and others conspired to steal 10 kilograms of cocaine from a stash house. The cocaine did not exist, as the sting was devised by the Philadelphia office of ATF. The matter began when Washington's co-defendant, Dwight Berry, approached an ATF confidential informant (CI) in late 2012 and told the CI he was interested in robbing drug dealers and users. The CI then introduced Berry to an undercover agent, who purported to be familiar with a stash house where 10 kilograms of cocaine could be found. Berry then gathered a robbery

crew, which included Washington and two others. After many meetings and phone calls, the men gathered on the day of the purported robbery – March 15, 2013 – with two guns and other robbery accoutrements, when they were arrested by ATF. *United States v. Washington*, 869 F.3d 193, 198-99 (3d Cir. 2017).

Washington was convicted at trial of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One); attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count Two); conspiracy to possess with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count Three); and attempted possession of five kilograms or more of cocaine with intent to distribute, in violation of 21 U.S.C. § 846 (Count Four). The jury acquitted Washington of a firearm charge under 18 U.S.C. § 924(c), and the government then dismissed a firearm charge under 18 U.S.C. § 922(g).

Washington, who was 33 years old at the time of the offenses, had never held verifiable employment, and had a long criminal record. In 1999, at age 19, he was convicted of possession of a controlled substance. In 2001, at age 21, he committed an assault, after he fired three shots at a woman as she and her children ran into their home. In 2003, at age 23, he committed aggravated assault and other offenses. On that occasion, after hearing gunshots, officers saw Washington, in a vehicle, putting a firearm in the glove box; Washington tried to escape, driving his car at a police officer at a high rate of speed; he was apprehended after the front tire of his vehicle blew out. In 2004, he possessed narcotics with intent to distribute, as well as a firearm. As a result of the 2003 and 2004 offenses, and his violation of parole on the 2001 assault, he served cumulative

sentences in prison totaling close to five years, and was not paroled until August 2010. PSR ¶¶ 38-41. Less than three years later, while still on parole, he committed the instant offenses. There is a pending Pennsylvania parole detainer as a result.

In this case, on June 13, 2016, the Court imposed a sentence of imprisonment of 264 months, and other penalties.

Before trial, Washington had moved for a hearing and discovery on the issue of racial profiling and selective prosecution, alleging that he had been targeted for prosecution by the government based on his race (despite the fact that it was his co-defendant, Berry, who recruited him to join the robbery conspiracy). He argued that the stash house sting and similar investigations improperly targeted minorities. This Court denied the motion, finding that Washington had failed to make the requisite threshold showing for such discovery, under *United States v. Armstrong*, 517 U.S. 456 (1996), and *United States v. Bass*, 536 U.S. 862 (2002) (per curiam),

On appeal, the Third Circuit affirmed the conviction and sentence. It denied a claim that Washington's trial counsel was ineffective in opening the door on cross-examination to revelation of a previous drug conviction of the defendant, and also denied a due process challenge to imposition of a mandatory minimum sentence. The Court of Appeals concluded, however, that remand was warranted for further consideration of discovery respecting the claim of discrimination. A lengthy process of discovery ensued, after which, on January 13, 2021, this Court denied further relief, and denied the defendant's motion to dismiss the indictment. It concluded: "Although Defendant's proffered evidence confirms that ATF stash house stings disproportionately impact

minorities, under the legal standard governing selective enforcement claims, Defendant's Motion will be denied because his proffered evidence falls short of proving selective enforcement by ATF agents." ECF 391 at p. 4.

The defendant is serving his sentence at FCI Allenwood Medium, with an anticipated release date of December 12, 2031. He has served approximately 96 months, and has credit for good conduct time of approximately 14 months, for total time served of approximately 110 months of the 264-month term. He has committed only one minor disciplinary infraction during his time in custody (being unsanitary or untidy in August 2015).

B.     **Request for Compassionate Release.**

On March 15, 2021, after unsuccessfully seeking BOP's support for compassionate release, Washington submitted a motion to this Court for compassionate release. He did not cite any medical condition, and relied instead on the general threat of COVID-19 in the prison setting, while criticizing BOP's mitigation efforts.

The undersigned obtained the medical records of the defendant for the past year from BOP, which are filed under seal as Exhibit A. The records reveal that the defendant, who is 41 years old, is in good health. He presents no chronic condition. His body mass index (BMI) was 28.2 on November 6, 2020, which qualifies as obesity but is below the threshold of 30 that the CDC states presents a risk of severe COVID-19 disease, and is instead in the range in which the CDC states there "might" be a risk. Also, he is prediabetic; his hemoglobin A1C on November 3, 2020, was 6.4, at the upper end of the

prediabetic range. (Prediabetes is not a COVID-19 risk factor. *See, e.g., United States v. Rae*, 2020 WL 4544387, at *4 (E.D. Pa. Aug. 6, 2020) (Pratter, J.).)

On November 16, 2020, Washington tested positive for COVID-19. He remained asymptomatic, and the case was deemed resolved on November 26. In January, he reported that he at times had residual shortness of breath and wheezing, and was prescribed an Albuterol inhaler to use as needed. He has not presented further complaints in recent months.

### C. BOP's Response to the COVID-19 Pandemic.

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

This office does not oppose compassionate release based on the current status of an institution in mitigating the spread of the virus. Even if the situation at a particular prison appears under control at the moment, we recognize that the virus is pernicious and may rapidly spread in a prison environment at any time. Therefore, our focus is on whether an inmate is at greater risk of an adverse outcome were he to contract the disease, and if so, whether consideration of all sentencing factors nevertheless warrants continued confinement.[1]

---

[1] As a judge recently explained, "The overall number of COVID-19 cases reported in BOP facilities continues to grow. However, a facility that at one point has a high number of cases may manage to control its infection rate, while a facility with few cases may experience a rapid outbreak. This means that, except in a rare situation, the

However, it is reassuring, and we advise for the information of the Court, that BOP has had success at many institutions in limiting the spread of the virus, and also in stemming outbreaks when they occur. BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined, and not released into the general population until the passage of 14 days and return of a negative test; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences.[2] This action, combined with

---

Court does not rely solely on a snapshot of COVID-19 numbers in any particular prison to constitute an 'extraordinary and compelling' reason for compassionate release, as that number will likely change in the near future. Thus, the new information presented by Mr. Beckett regarding the COVID-19 infection rate at Fort Dix FCI does not constitute an 'extraordinary and compelling reason' for compassionate release." *United States v. Beckett*, 2021 WL 92803, at *1 (D. Alaska Jan. 11, 2021) (Gleason, J.).

[2] This Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review). *See also, e.g., United States v. Gray*, 2020 WL 6822949, at *2 (E.D. Pa. Nov. 20, 2020) (Sanchez, C.J.); *United States v. Rodriguez-Collazo*, 2020 WL 2126756, at *2-3 (E.D. Pa. May 4, 2020) (Younge, J.); *United States v. Pettiway*, No. CR 08-129, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) (Bartle, J.); *United States v. Torres*, 2020 WL 3498156, at *5-6 (E.D. Pa. June 29, 2020) (Kearney, J.); *United States v. Cruz*, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D.

the reduced number of new arrivals during the pandemic, and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, designed to increase the possibility of social distancing and reduce the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% smaller, at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful. To be sure, there is no way to stop this virus, until vaccines are available and effective, and inmates inevitably will be infected and some may succumb, just as in the population at large. But it is notable that the rate of deaths in federal prisons as a whole has largely matched that in the total general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

BOP's aggressive efforts have extended to FCI Allenwood Medium. For many months, the institution was entirely successful in warding off the virus, not reporting a single case. Then beginning in late 2020, there were outbreaks, to which BOP responded with aggressive testing and quarantine procedures. At present, there is 1 inmate who is

---

Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

positive and is isolated while he is treated/recovers. There are 543 current inmates who have recovered, including Washington, in a total population of 1,125. There has been no COVID-related death at the facility.

The latest statistics are available at www.bop.gov/coronavirus.

**II.    Discussion.**

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and

compelling reason." Accordingly, the relevant policy statement of the Commission is binding on the Court. *See Dillon v. United States,* 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).[3]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

---

[3] Prior to the passage of the First Step Act, while the Commission policy statement was binding on the Court's consideration of a motion under § 3582(c)(1)(A), such a motion could only be presented by BOP. The First Step Act added authority for an inmate himself to file a motion seeking relief, after exhausting administrative remedies, or after the passage of 30 days after presenting a request to the warden, whichever is earlier.

Under the law, the inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon,* 560 U.S. at 827-28 (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification).

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)  Medical Condition of the Defendant.—

    (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)  The defendant is—

        (I)  suffering from a serious physical or medical condition,

        (II)  suffering from a serious functional or cognitive impairment, or

        (III)  experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)  Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  Family Circumstances.—

    (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. The Third Circuit held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). *See also United States v. Roeder*, 807 F. App'x 157, 160-61 (3d Cir. 2020) (per curiam) (not precedential) ("the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence."), *id.* at 161 n.16 ("Similarly, the existence of some health risk to every federal prisoner as the result of this

global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."). *See also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own.").

However, the government acknowledges that an inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19 presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," as stated in note 1(A), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, 2020 WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) (Slomsky, J.) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 2020 WL 1627331, at *20 (W.D. Pa. May 29, 2020))).

The CDC's list of risk factors was most recently updated, based on the latest data, on March 15, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that certainly present a risk, with a separate list of conditions regarding which there is insufficient data to conclude anything other than that these conditions "might" put a person at risk. Therefore, inmates with conditions on the latter list do not present an

- 12 -

extraordinary basis for relief. "Given the lack of data and certainty regarding this second group of conditions, the fact that Defendant has a condition that may increase his risk for severe illness from COVID-19, without more, does not present an 'extraordinary and compelling reason' under the compassionate release statute and U.S.S.G. § 1B1.13." *United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020). *See also United States v. Hill*, 2020 WL 6202322, at *3 (E.D. Pa. Oct. 22, 2020) (Schmehl, J.) (court does not consider a condition in the "might" category); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) (Slomsky, J.) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension."); *United States v. Estrada*, 2021 WL 308271 (E.D. Pa. Jan. 29, 2021) (Joyner, J.) (74-year-old suffers from a variety of ailments, including hypertension, asthma, obstructive sleep apnea, and limited vision, is a prostate cancer survivor, and continues to need a permanent urinary catheter, but none of these are definite risk factors, and he therefore does not present an extraordinary basis); *United States v. Alejo*, 2020 WL 6122528, at *1 (S.D. Ga. Oct. 16, 2020) ("at this point, the Court cannot conclude that the "might" category qualifies an illness as sufficiently serious to warrant compassionate release in and of itself.").

Here, the defendant is not eligible for compassionate release because he has not pointed to any condition that he currently has that is on the CDC's list of certain risk factors, or indeed any chronic medical ailment. The motion should therefore be denied. *See, e.g., United States v. Williams*, 2020 WL 4001045, at *2 (E.D. Pa. July 14, 2020) (Bartle, J.) (denied for inmate who presents no health conditions); *United States v. Cato*,

2020 WL 4193055, at *2 (E.D. Pa. July 21, 2020) (Beetlestone, J.) (same); *United States v. Moore*, 2020 WL 4193012, at *1 (E.D. Pa. July 21, 2020) (Pappert, J.) (same); *United States v. Ramirez-Ortega*, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J.) (same); *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors).[4]

Further, even if the defendant were eligible for consideration for compassionate release, relief should be denied. This Court must then consider all pertinent circumstances, including the 3553(a) factors, and possible danger to the community. *See United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020) (per curiam; not precedential)

---

[4] It also bears noting that the defendant contracted COVID-19 and, fortunately, apparently recovered from it without significant consequence. We cannot say that this eliminates all risk, given that there is not yet scientific certainty regarding a risk of reinfection. But in this circumstance, the large majority of courts to address the matter have concluded that the risk is mitigated and compassionate release is not justified. *See, e.g.*, *United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) (Pratter, J.) ("the risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here. Presently, there is no scientific consensus on the risk of reinfection. . . . Moreover, this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release."); *United States v. Moore*, 2020 WL 7264597, at *3 (E.D. Pa. Dec. 10, 2020) (Beetlestone, J.) (inmate suffers from mild obesity and hypertension; release is denied because he recovered from COVID-19 without symptoms); *United States v. Moore*, 2021 WL 308331, at *2 (E.D. Pa. Jan. 29, 2021) (Pappert, J.); *United States v. Jimerson*, 2021 WL 280085, at *3 (E.D. Pa. Jan. 25, 2021) (Sanchez, C.J.); *United States v. Irizzary*, 2021 WL 735779, at *7 (E.D. Pa. Feb. 25, 2021) (Kearney, J.).

(summarily affirming the denial of compassionate release, in a case in which the defendant presented medical risk, upon holding that the district court did not abuse its discretion in considering the nature of the offense, the defendant's history, and the status of the virus at the facility); *United States v. Bullock*, 833 F. App'x 934 (3d Cir. 2021) (not precedential) (granting motion for summary affirmance of denial of compassionate release, as the district court did not abuse its discretion in denying relief for medically vulnerable inmate upon considering the 3553(a) factors, including the substantial time remaining to be served on the sentence, and the defendant's criminal history and institutional infractions).

At present, the defendant's medical conditions are appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, and also acts to treat any inmate who does contract COVID-19.

Moreover, he continues to present a danger to the community, and should be required to serve the sentence that this Court imposed for his criminal conduct. Throughout his adult life, until the age of 33, Washington either committed crimes or served prison time. Then, he was prepared to participate in what promised to be a violent robbery of what he believed was a huge stash of cocaine. Even now, Washington would not be released even if he obtained compassionate release here, as he faces a parole detainer based on his violations of parole.

For all of these reasons, the defendant fails to demonstrate how release, 110 months into a 264-month sentence for potentially violent conduct, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.

*See* 18 U.S.C. § 3553(a)(2)(A). A consideration of the factors above shows that release at this point is inappropriate based on the offense of conviction, the defendant's managed medical condition, and the amount of time remaining on the defendant's sentence. *See, e.g.*, *United States v. Parnell*, 2021 WL 148519, at *5 (E.D. Pa. Jan. 15, 2021) (Sanchez, C.J.) (defendant has served just over half of 181-month sentence for plotting to participate in an armed stash house robbery; obesity alone is not sufficient, and even if it were, release is not warranted in light of the violent nature of the offense and time served).

In sum, upon consideration of all pertinent factors, the motion for compassionate release should be denied.

Respectfully yours,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

# CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served by first-class mail, postage prepaid, upon:

> Mr. Askia Washington
> No. 69032-066
> FCI Allenwood Medium
> P.O. Box 2000
> White Deer, PA  17887

> > */s Robert A. Zauzmer*
> > ROBERT A. ZAUZMER
> > Assistant United States Attorney

Dated:  March 21, 2021.