IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> ASKIA WASHINGTON, <br><br> Defendant. | CRIMINAL ACTION <br> NO. 13-171-2 |

**OPINION**

**Slomsky, J.**                                                                                           **April 13, 2021**

**I.     INTRODUCTION**

Defendant Askia Washington, who is serving a 264-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In his pro se Motion (Doc. No. 396), he argues that the Court should grant him compassionate release because the COVID-19 pandemic and conditions at the Federal Correctional Institution ("FCI") Allenwood in Union County, Pennsylvania, amount to extraordinary and compelling circumstances justifying his release.[1] Defendant also contends that granting him compassionate release would be consistent with the § 3553(a) sentencing factors. The Government opposes Defendant's Motion, citing the insufficiency of COVID-19 risk factors in Defendant's medical records, the nature and characteristics of his underlying offenses, and the numerous measures the Bureau of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities.

For reasons that follow, Defendant's Motion (Doc. No. 396) will be denied.

---

[1] FCI Allenwood places inmates in different security level facilities. Defendant Washington is incarcerated in the medium level facility. (See Doc. No. 397 at 4.)

1

## II.     BACKGROUND

### A.     Defendant's Prior Convictions

Defendant is presently incarcerated for committing several offenses that arose during an illicit drug stash house sting operation conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Philadelphia Regional Office.  (See Doc. No. 397 at 1.)  In this regard, in 2013, Defendant and three others conspired to rob the fictitious drug "stash house" of what they thought were 10 kilograms of cocaine.  (See id.)  On the day of and prior to the planned robbery, Defendant and his co-conspirators drove to and convened in a parking lot where they were immediately arrested.  (See id. at 2.)

Defendant proceeded to trial and on June 9, 2015, a jury found him guilty of conspiracy and attempt to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Counts 1 and 2), conspiracy to possess five or more kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 846 (Count 3), and attempted possession of five or more kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 846 (Count 4).  (See id.)  Defendant was acquitted of possession of a firearm in furtherance of a crime of violence and a drug trafficking crime, and thereafter the Government dismissed a felon in possession of a firearm charge.  (See id.)

On June 13, 2016, this Court sentenced Defendant to a total term of 264 months' imprisonment followed by 10 years' supervised release.  (See Doc. No. 287.)  He is currently serving his sentence at FCI Allenwood, and has served approximately 96 months of his sentence to date.[2]  (See Doc. No. 397 at 4.)  With good time credit, his anticipated release date is December 12, 2031.  (See id.)

---

[2]     Defendant has served approximately 96 months of his 264-month sentence and has earned approximately 14 months' credit for good conduct.  (See Doc. No. 397 at 4.)

2

### B. Defendant's Pro Se Motion for Compassionate Release

On March 15, 2021, Defendant filed the instant pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 396.) In the Motion, he asks the Court to "reduce [his] sentence to time served and appoint counsel for further arguments." (Id. at 5.) He states that he is "in fear for [his] life" at FCI Allenwood because the prison "is experiencing an active outbreak" of COVID-19. (Id. at 1.) "[T]he institution is not testing everyone and they're ill equipped to combat[] Covid-19. For example, they have one doctor and two [physician assistants] for over 1000 inmates." (Id. at 1-2.)

Defendant explains that FCI Allenwood has been on a "modified operations" schedule since April 2020 which has "deterred the inmates from programming, visits, exercise, and religious services." (Id. at 2.) He asserts that prison conditions are "beyond punitive . . . are inhuman[e] and brutal and furthermore unconstitutional." (Id.) For these reasons, Defendant asks the Court to grant him compassionate release "pursuant to Title 18 U.S.C. § 3582(c)(1)(A)(i) for extraordinary and compelling reasons." (Id. at 2-3.)

Defendant also argues that "granting compassionate release would not diminish the goals of sentencing under [§] 3553(a)." (Id. at 4.) He states that he "would pose no danger to any person or the community," and "[i]f the Court is concerned about any risk [his] release would pose to the public it can mitigate those risks by fashioning appropriate terms of his supervised release." (Id.) Ultimately, Defendant "does not dispute the severity of his crime, nor does he seek to minimize the harm he may have caused to the public. Rather, [he] presents extraordinary and compelling reasons in support of compassionate release as embodied by the First Step Act." (Id.)

Defendant attached exhibits to his Motion that show he has satisfied the administrative exhaustion requirements necessary for the Court to consider his Motion. (See id. at 10-17.) In

addition, one exhibit shows that Defendant tested positive for COVID-19 on November 16, 2020 and was deemed asymptomatic. (See id. at 8.)

    **C.**    **The Government's Response to Defendant's Motion**

On March 21, 2021, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 397.) In its Response, the Government submits that "[D]efendant is not eligible for compassionate release because he has not pointed to any condition that he currently has that is on the [Centers for Disease Control and Prevention's ("CDC's")] list of certain risk factors, or indeed any chronic medical ailment." (Id. at 13.) And "even if [he] were eligible for consideration for compassionate release," the Government asserts that "relief should be denied" because the § 3553(a) sentencing factors "show[] that release at this point is inappropriate based on the offense of conviction, . . . [D]efendant's managed medical condition, and the amount of time remaining on [his] sentence." (Id. at 14, 16.) According to the Government, "[D]efendant fails to demonstrate how release, 110 months into a 264-month sentence for potentially violent conduct, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense." (Id. at 15.)

**III.**    **DISCUSSION**

    **A.**    **The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)**

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality," Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has

exhausted his administrative remedies.³ See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence

---

³ A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion. On November 5, 2020, Defendant sent a request for compassionate release to the Warden at FCI Allenwood, and the Warden denied his request on November 18, 2020. (See Doc. No. 396 at 12-13.) On January 15, 2021, Defendant requested reconsideration for compassionate release, and the Warden denied his request on February 10, 2021. (See id. at 10.) On March 15, 2021, over thirty days after the denial of reconsideration, Defendant filed the instant Motion for Compassionate Release. (See id. at 1.) Because at least thirty days have elapsed from the date the Warden received Defendant's request and denied it to the date Defendant filed the instant Motion, he has met the exhaustion requirement.

reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
>     (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
>     (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>     (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13, n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
>     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>     (ii) The defendant is—
>
>         (I) suffering from a serious physical or mental condition,
>
>         (II) suffering from a serious functional or cognitive impairment, or
>
>         (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  (B)  Age of the Defendant. The defendant

      (i)    is at least 65 years old;

      (ii)   is experiencing a serious deterioration in physical or mental health because of the aging process; and

      (iii)  has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

  (C)  Family circumstances.

      (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

      (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[4]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether

---

[4]  Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A).  See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotations omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)).  In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596.  Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction.  See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a).").  Section 3553(a) establishes factors for a court to consider in initially imposing a sentence.  Not

every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

    **B.**    **Defendant's Motion for Compassionate Release Will Be Denied**

Defendant's Motion will be denied because he has not shown an extraordinary and compelling reason for his release. Further, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[5] Each of these conclusions is discussed seriatim.

---

[5] Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence would be consistent with applicable policy statements of the Sentencing Commission.

1.   **Defendant Does Not Present Extraordinary and Compelling Reasons for His Release**

Defendant has not established the required particularized vulnerability to COVID-19 and its effects required to constitute extraordinary and compelling reasons for his release. Although Defendant was diagnosed with COVID-19 in November 2020, he was deemed asymptomatic, has purportedly recovered, and has no serious medical condition that places him at a uniquely high risk of severe illness or death if he were to be re-infected with COVID-19.[6]

To start, Defendant does not cite any medical condition in his Motion that constitutes extraordinary and compelling reasons justifying his release; rather, he states that he "presents extraordinary and compelling reasons in support of compassionate release as embodied by the First Step Act." (Doc. No. 396 at 4.) In its Response in Opposition, the Government argues that Defendant's medical records it filed under seal (see Doc. No. 398) show that he "is in good health." (Doc. No. 397 at 4.) "He presents no chronic condition. His body mass index (BMI) was 28.2 on November 6, 2020, which . . . is below the threshold of 30 that the CDC states presents a risk of severe COVID-19 disease[.]" (Id.)

---

[6]   Although Defendant tested positive for COVID-19 in November when a housing unit in FCI Allenwood experienced an outbreak (see Doc. No. 396 at 6), no actual, non-speculative risk of contracting COVID-19 at FCI Allenwood presently exists. In Defendant's Motion, he asserts that FCI Allenwood "is experiencing an[] active outbreak" of COVID-19. (Doc. No. 396 at 1) (emphasis omitted). However, in the Government's Response in Opposition filed on March 21, 2021, it notes that "[a]t present, there is 1 inmate who is positive and is isolated while he is treated/recovers." (Doc. No. 397 at 7-8.) Moreover, "[t]here are 543 current inmates who have recovered, including [Defendant] Washington, in a total population of 1,125." (Id. at 8.) As of the filing of this Opinion, FCI Allenwood only has one inmate who currently has COVID-19. See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (Apr. 13, 2021), https://www.bop.gov/coronavirus/. These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ." Id. (emphasis omitted). Given this data, COVID-19 is no longer present to a significant degree at FCI Allenwood.

Further, the Government notes that Defendant "is prediabetic; his hemoglobin A1C on November 3, 2020, was 6.4, at the upper end of the prediabetic range." (Id.) Finally, the Government acknowledges that Defendant tested positive for COVID-19 on November 16, 2020, but he "remained asymptomatic, and the case was deemed resolved on November 26." (Id. at 5.) While he reported in January 2021 "that he at times had residual shortness of breath and wheezing," Defendant "was prescribed an Albuterol inhaler to use as needed" and "has not presented further complaints in recent months." (Id.)

The CDC states that a person with a Body Mass Index ("BMI") between 25 and 30 kg/m$^2$ is overweight, while a person with a BMI of 30 kg/m$^2$ or greater is obese. See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Being overweight, obese, or severely obese "can make you more likely to get severely ill from COVID-19." Id. (emphasis omitted). The CDC does not list pre-diabetes as a COVID-19 risk factor.[7] Based on this information, and in light of the fact that Defendant tested positive for COVID-19 in November 2020 and was asymptomatic (see Doc. Nos. 396 at 8; 397 at 5), Defendant's BMI and pre-diabetic status do not present extraordinary and compelling reasons for his release.[8]

---

[7] See United States v. Rae, No. 15-432, 2020 WL 4544387, at *4 (E.D. Pa. Aug. 6, 2020) (citing United States v. Livingston, No. 18-416, 2020 WL 1905202, at *3 (E.D.N.Y. Apr. 17, 2020)) ("Pre-diabetes . . . is not listed by the CDC as a condition that increases the risk of COVID-19 complications."); (Doc. No. 397 at 4-5).

[8] See United States v. Pray, No. 14-55-1, 2021 WL 965318, at *2 (E.D. Pa. Mar. 15, 2021) ("Absent evidence of any other risk factors, Pray's slightly elevated BMI of 27 . . . do[es] not justify release."); United States v. Moldover, No. 14-637, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) (defendant's BMI of 27 kg/m$^2$ did not present an extraordinary and compelling reason warranting compassionate release); Rae, 2020 WL 4544387, at *4 ("[T]he Court concludes that [defendant's] status as pre-diabetic . . . do[es] not present [an] extraordinary and

Likewise, Defendant's November 2020 COVID-19 diagnosis does not present an extraordinary and compelling reason for his release. Courts in this district have denied compassionate release, in part, because the defendant had already contracted COVID-19 while incarcerated. See, e.g., United States v. Pray, No. 14-55-1, 2021 WL 965318, at *3 (E.D. Pa. Mar. 15, 2021) ("Pray's previous experience with COVID-19 does not present an extraordinary and compelling reason for his release . . . ."); United States v. Moore, No. 18-474, 2021 WL 308331, at *2 (E.D. Pa. Jan. 29, 2021) (collecting cases); United States v. Anico, No. 19-86, 2020 WL 5407913, at *4 (E.D. Pa. Sept. 9, 2020) (collecting cases). This conclusion is further justified when the defendant was asymptomatic.[9]

Accordingly, Defendant has not presented extraordinary and compelling reasons to justify granting his Motion for Compassionate Release.[10]

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

The relevant § 3553(a) factors also weigh against granting Defendant compassionate release. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See § 3553(a)(1). While Defendant "does not dispute the severity of his crime, nor does he seek to minimize the harm he may have caused to the public[,]" (Doc. No.

---

compelling reason to reduce his sentence."); United States v. Snell, No. 17-602, 2020 WL 4053823, at *2 (D. Md. July 20, 2020) (denying defendant's motion for compassionate release and noting that prediabetes does not increase vulnerability to COVID-19).

[9] See United States v. Moore, No. 14-315-06, 2020 WL 7264597, at *3 (E.D. Pa. Dec. 10, 2020); United States v. Wiltshire, No. 11-310, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020).

[10] Defendant is 41 years old. (See Doc. No. 397 at 4.) He does not suffer from a terminal illness or a serious cognitive impairment, and he does not indicate that he is a caregiver to minor children. See § 1B1.13 n.1(A)-(C). Thus, these factors listed in the Sentencing Guideline Manual, see § 1B1.13 n.1(A)-(C) are not relevant here.

396 at 4), there is no assurance that he would be deterred from committing additional crimes if he were released.

The Government notes that "[t]hroughout his adult life[] until the age of 33," Defendant "either committed crimes or served prison time." (Doc. No. 397 at 15.) Specifically:

> In 1999, at age 19, he was convicted of possession of a controlled substance. In 2001, at age 21, he committed an assault, after he fired three shots at a woman as she and her children ran into their home. In 2003, at age 23, he committed aggravated assault and other offenses. . . . In 2004, he possessed narcotics with intent to distribute, as well as a firearm.

(Id. at 2.) Roughly three years after serving cumulative sentences in prison and "while still on parole, he committed the instant offenses" for which he is presently incarcerated—conspiracy and attempt "to participate in what promised to be a violent robbery of what he believed was a huge stash of cocaine." (Id. at 3, 15.)[11]  Based on this history, there is no assurance that Defendant would abstain from criminal activity if he were granted compassionate release.

The Court has also considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served less than half of his 264-month sentence. The magnitude of Defendant's crimes warrant the sentence he received.[12]  Although he asserts that "[a] reduction in [his] sentence is consistent with

---

[11] Of note, the Government states that Defendant "would not be released even if he obtained compassionate release here, as he faces a parole detainer based on his violations of parole." (Doc. No. 397 at 15.)

[12] In United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3582(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining

13

the sentencing guidelines[] and [he] no longer poses a danger to society" (Doc. No. 396 at 4), his release at this point would neither reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes Defendant may commit.[13]

Lastly, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. See § 3553(a)(6). Defendant received a sentence below the range set by the Sentencing Guidelines, which Congress created to address sentencing disparities. The sentencing range was 360 months to life imprisonment. (See Doc. No. 293 at 67:3-5.) To reduce Defendant's sentence further would not reflect the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses. Therefore, none of the applicable § 3553(a) factors favor Defendant's release.

### IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. No. 396) will be denied.[14] An appropriate Order follows.

---

in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

[13]   See United States v. Parnell, No. 12-418-6, 2021 WL 148519, at *5 (E.D. Pa. Jan. 15, 2021) ("Parnell's instant offense involved conspiring and attempting to rob a stash house. . . . Further, he has served just over 50% of his sentence, and release at this juncture would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. . . . Given the violent offense Parnell planned to engage in, . . . Parnell poses a danger to the community and the [c]ourt will deny his motion for compassionate release on this basis as well.").

[14]   Because Defendant's Motion is without merit, the Court also will deny Defendant's request for court-appointed counsel "for further arguments" related to the Motion. (Doc. No. 396 at 5.)