IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ASKIA WASHINGTON,

               Petitioner,

   v.

UNITED STATES OF AMERICA,

               Respondent.

CRIMINAL ACTION
NO. 13-171-2

CIVIL ACTION
NO. 21-620

## OPINION

**Slomsky, J.**                                                                                    **July 1, 2021**

## I.     INTRODUCTION

Before the Court is Petitioner Askia Washington's <u>pro</u> <u>se</u> Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255.  (Doc. No. 400.)  In the Motion, Petitioner argues

eight grounds for relief: a substantive Due Process violation, five ineffective assistance of counsel

claims, an improper sentence enhancement, and actual innocence.  In its Response in Opposition,

the Government avers that all of Petitioner's claims are without merit as "[n]one present any

factual dispute warranting a hearing, and none presents even a debatable issue."  (Doc. No. 405 at

25.)

For the reasons stated <u>infra</u>, Petitioner's Motion (Doc. No. 400) will be denied without an

evidentiary hearing, and a certificate of appealability will not be issued.

## II.    BACKGROUND

The facts of Petitioner Washington's case are summarized as follows:

Defendant[1] is presently incarcerated for committing several offenses that arose
during an illicit drug stash house sting operation conducted by the Bureau of
Alcohol, Tobacco, Firearms and Explosives ("ATF") Philadelphia Regional Office.

---

[1]     "Defendant" refers to Askia Washington, who is presently the Petitioner of the instant Motion.

(See Doc. No. 397 at 1.) In this regard, in 2013, Defendant and three others conspired to rob the fictitious drug "stash house" of what they thought were 10 kilograms of cocaine. (See id.) On the day of and prior to the planned robbery, Defendant and his co-conspirators drove to and convened in a parking lot where they were immediately arrested. (See id. at 2.)

Defendant proceeded to trial and on June 9, 2015, a jury found him guilty of conspiracy and attempt to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Counts 1 and 2), conspiracy to possess five or more kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 846 (Count 3), and attempted possession of five or more kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 846 (Count 4). (See id.) Defendant was acquitted of possession of a firearm in furtherance of a crime of violence and a drug trafficking crime, and thereafter the Government dismissed a felon in possession of a firearm charge. (See id.)

United States v. Washington, No. 13-171-2, 2021 WL 1390707, at *1 (E.D. Pa. Apr. 13, 2021).

On September 17, 2015, Defendant wrote a letter to the Court requesting the appointment of new counsel, in part because defense counsel "has an alcohol problem and needs help." (Doc. No. 262 at 2.) The Court granted Defendant's request and appointed Mark Greenberg, Esquire, to represent him at sentencing. (Doc. No. 249.) A telephone conference with Greenberg and Government counsel, Salvatore Astolfi, Esquire, was held on October 16, 2015. During the telephone conference, Greenberg requested that the Court hold an evidentiary hearing so that Astolfi and Defendant could testify to their observations regarding defense counsel's alleged alcohol use before and at trial. Astolfi did not oppose the request.

. . .

The evidentiary hearing was held on November 9, 2015. At the hearing, Astolfi and Defendant both testified that defense counsel's conduct at trial was unusual.

. . .

On January 29, 2015, Defendant filed a Motion for a New Trial, alleging ineffective assistance of trial counsel due to his lawyer's alcohol consumption prior to and during trial. (Doc. No. 262.) In the Motion for a New Trial, . . . . Defendant first argue[d] that he would have been acquitted of all counts had his lawyer not elicited his drug conviction in front of the jury. (Doc. No. 264 at 6.) According to Defendant:

> By referencing Mr. Washington's drug conviction on cross-examination of [ATF] Agent Bowman, which opened the door for the government to elicit defendant's drug conviction a second time during its re-cross, [defense counsel] eviscerated his theory of

> defense that defendant was an innocent minority unfairly targeted and racially profiled by ATF. [Defense counsel] repeatedly told the jury that ATF concocted these stash house robbery scenarios in order to racially target innocent African-Americans who otherwise had no involvement in criminal activity because they were "poor," "stupid," or "desperate."
>
> (Id. at 4.) Defendant quote[d] portions of defense counsel's closing argument in which he stated that the Government targets "not real criminals, not known criminals, but stupid individuals" and asked the jury, "Is it because African Americans are the only ones that are violent? Animals that have to be taken off the street, is that what we are?" (Doc. No. 245 at 165, 174.)
>
> Next, Defendant argue[d] that defense counsel was ineffective because on cross-examination he elicited from [ATF] Special Agent Edwards that [ATF confidential informant] Roc had been terminated as an informant. Prior to the cross-examination, Astolfi had informed defense counsel that Roc had been shot at during the investigation, and suggested that defense counsel not pursue that line of questioning. At trial, defense counsel elicited that Roc had received threats and was relocated for his safety on cross-examination of Agent Edwards. According to Defendant, eliciting this information "only served to make the informant a sympathetic figure in the eyes of the jury and destroy [defense counsel's] closing argument to the contrary." (Doc. No. 262 at 7.) Ultimately, Defendant argue[d] that defense counsel's alcohol use before and during trial "directly contributed to his ineffectiveness" and warrant[ed] a new trial. (Doc. No. 262 at 9.)

United States v. Washington, 184 F. Supp. 3d 149, 155-57 (E.D. Pa. 2016), aff'd, 869 F.3d 193 (3d Cir. 2017) (footnote omitted). After reviewing the merits of Petitioner's Motion for a New Trial, this Court denied the motion, "finding in part that the 'mountain' of evidence against [Petitioner] forestalled a showing of prejudice under the two-part Strickland v. Washington test for ineffective assistance of counsel." Washington, 869 F.3d at 201 (citing Washington, 184 F. Supp. 3d at 160-62).

On June 13, 2016, Petitioner was sentenced. (See Doc. Nos. 287, 293.) In his Sentencing Memoranda and at the hearing, counsel for Petitioner argued that Petitioner was facing "a guideline sentence of 360 months to life for a crime created by the government; a mandatory minimum sentence of 20 years['] incarceration based on an arbitrary amount of 10 kilograms of non-existent

cocaine in a Hobbs Act prosecution where the statutory maximum sentence for Hobbs Act robbery is, itself, 20 years; and a career offender designation based on a second degree aggravated assault conviction that, had it been first degree, would not have qualified as a crime of violence and [Petitioner's] designation as a career offender."  (Doc. No. 285 at 2; <u>see</u> <u>also</u> Doc. No. 293 at 12:15-21, 42:4-20.)

The Court ultimately sentenced Petitioner to a total term of 264 months' imprisonment followed by 10 years' supervised release.  (<u>See</u> Doc. No. 287.)  While the Guideline range called for 360 months to life imprisonment, the Court thought the "Guidelines [were] higher than would be necessary to impose a sentence sufficient and -- but not greater than necessary under the circumstances" and imposed a downward variance.  (Doc. No. 293 at 67:6-9.)  The Court believed a variance was warranted, in part, due to counsel's argument "with respect to what the Guidelines would be had [Petitioner] been convicted of first degree aggravated assault[.]  [T]he Guidelines would be lower . . . . Not significantly lower, but lower . . . ."  (<u>Id.</u> at 67:25-68:5.)

Petitioner timely appealed his conviction and sentence.  (<u>See</u> Doc. No. 288.)  On appeal, Petitioner "again invoke[d] trial counsel's alcohol use," but "limit[ed] his ineffectiveness claim on appeal to the incident where trial counsel opened the door to testimony about his drug conviction." <u>Washington</u>, 869 F.3d at 202.  He also challenged his sentence, arguing that the Court "erred in following the 20-year mandatory minimum term set forth in 21 U.S.C. § 841(b)(1), which (as applicable here) kicks in when the quantity of cocaine is 5 kilograms or above and the defendant has a prior felony drug conviction."  <u>Id.</u> at 208.  He claimed that applying the mandatory minimum "in this kind of case, where the comprising elements were entirely fictitious and in the hands of

4

the government, violate[d] his right to due process." Id.[2]

The Third Circuit rejected Petitioner's arguments and affirmed. See id. at 223. Even though "ineffective assistance of counsel claims are generally not considered on direct appeal[,]" the Third Circuit exercised discretion over the claim because "ineffectiveness was invoked in and resolved by the District Court, which held a post-trial, pre-sentencing hearing at which Washington and the AUSA both testified . . . ." Id. at 203. "[T]he record amounted to, in effect, a mini collateral proceeding, akin to what is ordinarily expected under § 2255" which provided the Third Circuit "a sufficient foundation for direct appellate review." Id. In addressing the merits of the claim, the Third Circuit "agree[d] with the District Court that the general allegations of alcohol use do not require a departure from Strickland's two-prong standard—a point conceded by [Petitioner] in his new-trial memorandum." Id. at 204. "Alcohol or drug use by trial counsel can certainly be relevant to both parts of an ineffectiveness inquiry . . . . But on these facts, alleged substance abuse is not, without more, one of the rare forms of dereliction amounting to the per se denial of a defendant's Sixth Amendment right to the effective assistance of counsel." Id.

The Third Circuit also held that "the 5 kilograms of cocaine charged in the indictment and found by the jury did not amount to an impermissible manipulation of sentencing factors by the government." Id. at 213. Determining that his mandatory minimum due process claim "f[ell] within the broader category of 'outrageous government conduct[,]'" the Circuit noted that "most of the factors [the Government] created for the crime . . . were not the drivers of [Petitioner's] actual sentence." Id. at 210-11. "Instead, the 20-year mandatory minimum was the product of two

---

[2]   Petitioner also challenged the denial of his pretrial motion for discovery, which was the only claim the Third Circuit vacated and remanded to this Court for reconsideration. See United States v. Washington, 869 F.3d 193, 213 (3d Cir. 2017). This issue has since been resolved, see United States v. Washington, No. 13-171-2, 2021 WL 120958 (E.D. Pa. Jan. 13, 2021), and is not cited as error in the instant Motion.

factors: the 5 kilograms of cocaine charged in the indictment and found by a jury, and the § 851 statement[3] filed by the government." Id. at 211. Therefore, "because he was a career offender, [Petitioner's] Guidelines range was not governed directly by the 10 kilogram drug-quantity amount—and the District Court sentenced him far below the recommended Guidelines range anyway." Id.

On March 23, 2021, Petitioner timely[4] filed the instant pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 400.) In the Motion, Petitioner asserts eight grounds for relief. In the first Ground, Petitioner alleges a Substantive Due Process violation, asserting that he "could not argue impossibility . . . because by law impossibility is not a defense to an inchoate crime, thus stripping Petitioner of a[n] affirmative defense because of the fict[it]ious/Hobbs Act and drug charge." (Id. at 4.) In Grounds Two to Six, Petitioner argues ineffective assistance of counsel for: (1) trial counsel's "unprofessional conduct and appellant [sic] attorney using an improper vehicle to argue the unprofessional conduct[;]" (2) his "attorney failing to challenge Petitioner['s] designation as a career offender" at sentencing; (3) his "attorney failing

---

3    (See Doc. No. 202) ("[P]ursuant to Title 21 U.S.C. § 851, [Petitioner is charged] with having been previously convicted of [a] prior felony controlled substance violation . . . . This prior conviction serves as the basis for increased punishment in the above-captioned case."); see also § 851(a)(1) ("No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon.").

4    The Court afforded Petitioner a 60-day extension of time to file a § 2255 motion after its resolution of remaining discovery issues. (See Doc. No. 351); see also supra note 2. On January 13, 2021, the Court resolved the discovery issues (see Doc. Nos. 391-92), and on February 8, 2021, Petitioner filed his pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (see Doc. No. 394). On March 1, 2021, the Court Ordered the Clerk of Court to furnish Petitioner with the standard form for filing a § 2255 motion and Ordered Petitioner to return the completed form within 30 days. (See Doc. No. 395.) On March 23, 2021, Petitioner timely filed the instant Motion on the standard form. (See Doc. No. 400.)

to raise 'sentencing manipulation' . . . at any stage post trial[;]" (4) his "attorney failing to raise claim of 'outrageous government conduct'" at sentencing and on direct appeal; and for (5) his "attorney failing to argue an entrapment defense" at trial.  (Id. at 5-8, 13.)  In Ground Seven, Petitioner claims the Court improperly enhanced his sentence for "use of an [sic] violent weapon which Petitioner was aquitted [sic] of."  (Id. at 13.)  Finally, in Ground Eight, Petitioner appears to claim actual innocence.  (See id.)

On April 28, 2021, the Government filed a Response in Opposition, in which it avers that all of Petitioner's claims "are without merit."  (Doc. No. 405.)  Regarding Ground One, the Government submits that "[t]he absence of an impossibility defense presents no due process issue."  (Id. at 5.)  Regarding the ineffective assistance of counsel claims in Grounds Two through Four, the Government notes that, contrary to Petitioner's assertions, his counsel did raise the issues at sentencing and/or on direct appeal.  (See id. at 6-16.)  For the ineffective assistance claims in Grounds Five and Six, the Government avers that Petitioner cannot establish ineffective assistance for counsel's failure to argue "outrageous government conduct" or entrapment.  (See id. at 16-24.)  Regarding Ground Seven, the Government submits that, contrary to Petitioner's assertion, "the Court in fact agreed not to consider the acquitted conduct" when sentencing Petitioner.  (Id. at 24.)  Finally, regarding Ground Eight, the Government does not address it because it is a "'vague and conclusory allegation[]'" that "'may be disposed of without further investigation by the District Court.'"  (Id. at 4 n.1) (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)).

Petitioner's Motion is now ripe for review.[5]

---

[5]    In reaching a decision, the Court has considered Petitioner's pro se Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 400), the Government's Response in Opposition to the Motion (Doc. No. 405), and the pertinent parts of the record in this case.

## III. STANDARD OF REVIEW

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside or correct the sentence" where: (1) the sentence imposed was in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence was otherwise subject to collateral attack. See 28 U.S.C. § 2255(a). Section 2255(b) provides the procedure for reviewing the motion:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

§ 2255(b).

The district court is given discretion is determining whether to hold an evidentiary hearing on a prisoner's motion under § 2255. See Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the court must decide whether the petitioner's claims, if proven, would entitle him to relief and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. See Gov't of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant

is not entitled to relief.'" <u>United States v. Nahodil</u>, 36 F.3d 323, 326 (3d Cir. 1994) (quoting <u>United States v. Day</u>, 909 F.2d 39, 41-42 (3d Cir. 1992)); <u>see</u> <u>also</u> <u>Forte</u>, 865 F.2d at 62.

## IV.   ANALYSIS

As previously stated, Petitioner asserts eight grounds for relief: a Substantive Due Process violation, five claims of ineffective assistance of counsel, improper sentence enhancement, and actual innocence.  (<u>See</u> Doc. No. 400 at 4-8, 13.)  In its Response in Opposition, the Government avers that each ground for relief is meritless because the issues were already litigated at sentencing and/or on appeal, or because Petitioner cannot establish ineffective assistance of counsel.  (<u>See</u> Doc. No. 405 at 4-25.)  Each ground for relief will be discussed in turn.

### A.   Substantive Due Process Violation

In the first ground for relief, Petitioner alleges a Substantive Due Process violation.  (<u>See</u> Doc. No. 400 at 4.)  He contends that he was "stripp[ed] . . . of a[n] affirmative defense" because he "could not argue impossibility," which he claims "[was] the only possible defense" to the attempt and conspiracy inchoate crimes he was convicted of.  (<u>Id.</u>)  He further avers that this ground for relief "was not raised on direct appeal because it is a constitutional claim."  (<u>Id.</u> at 5.)  In its Response, the Government states that "[t]he absence of an impossibility defense presents no due process issue[,]" and "any constitutional claim may be raised on direct appeal." (Doc. No. 405 at 4 n.2.)  Therefore, "[t]here is . . . no basis for [Petitioner's] default of this issue[.]"  (<u>Id.</u> at 5.)

"[A petitioner] cannot use § 2255 to raise for the first time issues that could have been raised on direct appeal."  <u>United States v. Fahey</u>, No. 00-6185, 2002 WL 1302262, at *1 (E.D. Pa. June 13, 2002).[6]  "If the [petitioner] fails to raise a claim on direct appeal, the claim is procedurally

---

[6]   <u>See</u> <u>also</u> <u>De Jesus v. United States</u>, 30 F. Supp. 2d 115, 117 (D.P.R. 1998) ("[T]he general rule is that before bringing a § 2255 action[, the d]efendant must raise all constitutional claims on direct appeal[.]").

defaulted, or waived, and cannot be collaterally reviewed pursuant to § 2255, unless [he] can show cause for his default and actual prejudice attributable to the alleged constitutional violation." Id. (citing Davis v. United States, 411 U.S. 233, 243-45 (1973)). To establish cause, the petitioner must point to some objective, external factor "that cannot be fairly attributed to him." United States v. Smith, 235 F. Supp. 2d 418, 426 (E.D. Pa. 2002) (citing Coleman v. Thompson, 501 U.S. 722, 751 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986)). To establish actual prejudice, the petitioner must point to errors "so substantial that the integrity of the entire trial [was] infected." Id. (citing United States v. Frady, 456 U.S. 152, 169-70 (1982)).

Here, Petitioner has not shown cause for his default. Rather than pointing to an objective, external factor, his reason for the default lies in the incorrect belief that the claim could not be raised "on direct appeal because it[']s a constitutional claim." (Doc. No. 400 at 5.) Petitioner also cannot prove actual prejudice. It is well established that for "inchoate crimes—attempt and conspiracy . . . —impossibility of completing the crime because the facts were not as the defendant believed is not a defense." United States v. Williams, 553 U.S. 285, 300 (2008); see also Harris v. United States, No. 14-6590, 2016 WL 830761, at *6 (D.N.J. Mar. 3, 2016) (citing United States v. Jannotti, 673 F.2d 578, 593-94 (3d Cir. 1982)) ("Impossibility is not a defense to conspiracy under the Hobbs Act where . . . the conspiracy was based on a government sting operation."). Therefore, it is clear that Petitioner's inability to argue impossibility at trial was not an error and did not affect the integrity of his trial. See Smith, 235 F. Supp. 2d at 426.

Because Petitioner did not raise his Substantive Due Process claim on direct appeal and does not establish cause for the default nor actual prejudice in the instant Motion, the Substantive Due Process claim in Ground One is waived. Accordingly, Petitioner's first ground for relief will

be dismissed.[7]

## B. Ineffective Assistance of Counsel

In Grounds Two through Six, Petitioner argues ineffective assistance of counsel. (See Doc. No. 400 at 5-8, 13.) Strickland v. Washington, 466 U.S. 668 (1984) "supplies the standard for addressing a claim of ineffective assistance of counsel." United States v. Smack, 347 F.3d 553, 537 (3d Cir. 2003) (citing Strickland, 466 U.S. at 687).

Under Strickland's two-part standard, a petitioner must first show that counsel's performance was deficient, that is, "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Second, a petitioner must show that counsel's "deficient performance prejudiced the defense." Id. at 687. To establish prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Only the most serious errors constitute deficient performance. See id. at 687 (describing errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"). The petitioner must prove both prongs for an ineffective assistance of counsel claim to be sustained.

### 1. Trial Counsel's Unprofessional Conduct

Petitioner's second ground for relief alleges ineffective assistance of counsel for trial counsel's "unprofessional conduct and appellant [sic] attorney using an improper vehicle to argue the unprofessional conduct." (Doc. No. 400 at 5-6.) Specifically, Petitioner avers that his trial

---

[7] Notwithstanding the procedural default of Ground One, the Court notes that Petitioner's Substantive Due Process claim would still be dismissed on the merits because, as the Government notes in its Response, "[t]he unavailability of an impossibility defense infringes no constitutional right[.]" (Doc. No. 405 at 5); see also Section IV.A, supra (citing United States v. Williams, 553 U.S. 285, 300 (2008)) (explaining that for "inchoate crimes—attempt and conspiracy . . . —impossibility of completing the crime because the facts were not as the defendant believed is not a defense.").

attorney "was drinking during [the] trial . . . and the U.S. [a]ttorney also noticed that [he] was drinking." (<u>Id.</u> at 6.) "On appeal," Petitioner claims that his new attorney "argued that [trial counsel] was intoxicated during Petitioner's trial[,]" but "as an experienced attorney he should have known that direct appeal was not a proper vehicle to argue ineffective assistance of counsel." (<u>Id.</u>) In its Response, the Government submits that this claim "has been fully adjudicated and cannot be raised again at this time." (Doc. No. 405 at 7.) It notes that the Third Circuit resolved this ineffective assistance claim on appeal and held that "general allegations of alcohol use do not require a departure from <u>Strickland</u>'s two-prong standard . . . ." (<u>Id.</u>) (quoting <u>Washington</u>, 869 F.3d at 204).

As an initial matter, Petitioner is correct that "ineffective assistance of counsel claims are generally not considered on direct appeal." <u>Washington</u>, 869 F.3d at 202. "Instead, they are more commonly brought in a collateral proceeding, such as through a post-conviction 28 U.S.C. § 2255 motion to vacate." <u>Id.</u> However, "'[w]here the record is sufficient to allow a determination of ineffective assistance of counsel,' . . . the issue can be resolved on direct appeal." <u>United States v. Hankerson</u>, 496 F.3d 303, 310 (3d Cir. 2007) (quoting <u>United States v. Headley</u>, 923 F.2d 1079, 1083 (3d Cir. 1991)).[8]

In this case, the Third Circuit did "exercise [its] discretion to reach the ineffectiveness claim" that Petitioner's counsel raised on direct appeal. <u>Washington</u>, 869 F.3d at 203. The Third Circuit explained:

> Washington's is the uncommon case where resolving an ineffectiveness claim on
> direct appeal is both feasible and efficient. Strictly speaking, he is not raising
> ineffectiveness for "the first time" on appeal. Rather, ineffectiveness was invoked

---

[8]  <u>See</u> <u>also</u> <u>United States v. Jones</u>, 336 F.3d 245, 254 (3d Cir. 2003) (citation omitted) (holding that because the district court "created an adequate record upon which [it could] consider Jones's claims, . . . [it would] proceed to review the [d]istrict [c]ourt's findings with respect to the effectiveness of Jones's prior counsel on . . . direct appeal.").

> in and resolved by the District Court, which held a post-trial, pre-sentencing hearing
> at which Washington and the AUSA both testified (trial counsel was invited to
> testify, but declined). The District Court—the trial judge—then denied the claim
> against the backdrop of the recently concluded trial. This development of the record
> amounted to, in effect, a mini collateral proceeding, akin to what is ordinarily
> expected under § 2255. It provides us with a sufficient foundation for direct
> appellate review.

Id. (footnote omitted). In addressing the merits of Petitioner's ineffective assistance claim, the

Third Circuit found that, "while this is the rare case where a claim of ineffective assistance of

counsel was properly raised on direct appeal instead of through a collateral attack, Washington has

not shown prejudice sufficient to call into doubt the integrity of his trial." Id. at 197. Ultimately,

the Third Circuit:

> [A]gree[d] with the District Court that the general allegations of alcohol use do not
> require a departure from Strickland's two-prong standard . . . . Alcohol or drug use
> by trial counsel can certainly be relevant to both parts of an ineffectiveness inquiry,
> especially if amplified or systemic, or on close questions of strategy and jury
> perception. But on these facts, alleged substance abuse is not, without more, one
> of the rare forms of dereliction amounting to the per se denial of a defendant's Sixth
> Amendment right to the effective assistance of counsel.

Id. at 204 (footnote omitted). Therefore, since the ineffective assistance of counsel claim was

"raised and rejected on direct appeal[,]" Petitioner is improperly raising this claim in the instant

Motion "to relitigate questions[] on collateral attack[.]" Smith, 235 F. Supp. 2d at 428 (citing

United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)) (quotations omitted) ("Section

2255 generally may not be employed to relitigate questions which were raised and considered on

direct appeal.").

Even assuming, arguendo, that Petitioner was raising this ineffective assistance claim for

the first time in the instant Motion, the Court would deny the claim. The Supreme Court has

opined that Section 2255 motions are the best vehicle to raise ineffective assistance claims because

the motions "often will be ruled upon by the same district judge who presided at trial." Massaro

v. United States, 538 U.S. 500, 506 (2003). "The judge, having observed the earlier trial, should have an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial." Id.

Here, this Court already used the "advantageous perspective" it gained from presiding over Petitioner's trial to deny his ineffective assistance of counsel claim. See Washington, 184 F. Supp. 3d 149; see also (Doc. No. 262.) After a jury convicted Petitioner, he filed a Motion for a New Trial based on the same ineffective assistance of counsel claim he now raises in the instant Motion—that trial counsel's "consumption of alcohol during pretrial preparation and at trial caused him to be constitutionally ineffective . . . ." Washington, 184 F. Supp. 3d at 150. After holding an evidentiary hearing and fully considering the merits of the claim, this Court denied the Motion for a New Trial. See id. at 166. As the Government summarizes in its Response:

> This Court . . . concluded that alcohol consumption by itself does not amount to constitutional ineffectiveness, and the defendant must instead establish particular shortcomings at trial that meet the two-part Strickland test. Washington advanced two: that trial counsel elicited on cross-examination of a government witness that Washington had a prior drug conviction; and that counsel elicited that the government informant ("Roc") had been deactivated because he had been threatened, something that Washington suggested made the informant more sympathetic in the eyes of the jury. With respect to both of these matters, this Court held that counsel's actions did not cause prejudice. The Court further held that there was a sound trial strategy for eliciting the evidence regarding the informant. Notably, the Court added in conclusion:
>
>> Finally, and most importantly, there is no evidence in this record that defense counsel's questions regarding Defendant's prior drug conviction and Roc's relocation due to threats and safety concerns were caused by, or associated with, alcohol consumption. With the one exception relating to the drug conviction, defense counsel's advocacy in this case was within the bounds of professional responsibility. Defense counsel was a zealous advocate on behalf of Defendant, even to the point where the jury acquitted Defendant on a serious gun charge that carried a mandatory minimum sentence that would have run consecutive to sentences imposed on other Counts. No conclusion can be drawn that what appears to be

> moderate consumption of alcohol in any way contributed to the conviction of Defendant.

(Doc. No. 405 at 6-7) (citing <u>Washington</u>, 184 F. Supp. 3d at 166.)

In sum, Petitioner is raising the same ineffective assistance claim that this Court already considered and rejected. And because this Court's "development of the record amounted to, in effect, a mini collateral proceeding, akin to what is ordinarily expected under § 2255[,]" the Third Circuit exercised discretion over the ineffectiveness claim when Petitioner's counsel raised it on direct appeal, and also rejected the claim. <u>Washington</u>, 869 F.3d at 203.

Accordingly, because this Court and the Third Circuit have both rejected Petitioner's ineffective assistance of counsel claim based on trial counsel's intoxication, Petitioner's ineffective assistance claim as asserted in Ground Two will be denied.

### 2. Failure to Challenge Career Offender Designation at Sentencing

Petitioner's third ground for relief alleges ineffective assistance of counsel on the ground that his "attorney fail[ed] to challenge Petitioner['s] designation as a career offender" at sentencing. (Doc. No. 400 at 7.) He notes that his prior Pennsylvania state conviction for aggravated assault[9] was "[o]ne of [his] prior predicates that was used to designate him as a career offender[,]" but for aggravated assault in Pennsylvania, "recklessly is a way you can violate the statute[,] and committing a crime recklessly lacks the proper mens rea" for career offender designation. (<u>Id.</u>) According to Petitioner, his "attorney failed to challenge/argue" this issue. (<u>Id.</u>) According to the Government, however, Petitioner "overlooks that counsel in fact made this argument and gained sentencing leniency as a result." (Doc. No. 405 at 7-8.)

The Government is correct. Prior to sentencing, Petitioner's counsel filed three supplemental memoranda to Petitioner's Sentencing Memorandum. (<u>See</u> Doc. Nos. 275, 277,

---

[9] <u>See</u> 18 Pa.C.S. § 2702.

285.)  In the Third Supplemental Sentencing Memorandum, counsel took issue with Petitioner's

career offender designation based on his Pennsylvania aggravated assault conviction and asked the

Court to consider it "in connection with the ultimate sentence imposed."  (Doc. No. 285 at 2-3.)

Counsel wrote as follows:

> Mr. Washington has been designated a career offender which subjects him to a
> sentencing guideline range of 360 months to life imprisonment.  One of the two
> predicate offenses that give rise to Mr. Washington's designation as a career
> offender is an aggravated assault conviction referenced in paragraph 40 of the PSR.
> . . . Mr. Washington was charged . . . with aggravated assault as a felony of the first
> degree and aggravated assault as a felony of the second degree.  A review of the
> Bill of Information underlying this conviction, supplied by the government, reveals
> that Mr. Washington was convicted of aggravated assault as a felony of the second
> degree.
>
> Felony of the first degree aggravated assault involves a defendant who "attempts to
> cause or intentionally, knowingly or <u>recklessly</u> causes serious bodily injury to . . .
> .[a police officer] while in the performance of duty[.]  18 Pa. C.S.A. § 2702 (a)(2)
> (emphasis supplied).  Under the law of this circuit, because aggravated assault,
> felony of the first degree, requires at a minimum, a <u>mens</u> <u>rea</u> of recklessness rather
> than intent, it is not a crime of violence.  <u>See</u> <u>United States v. Otero</u>, 502 F.3d 331,
> 336 (3d Cir. 2007) (simple assault not a crime of violence because it requires at a
> minimum, a <u>mens</u> <u>rea</u> of recklessness rather than intent).  Hence, had Mr.
> Washington been convicted of aggravated assault, felony of the first degree, he
> would not have qualified as a career offender and his guideline range would have
> been 235 to 293 months, corresponding to a total offense level 34 and criminal
> history category V.
>
> Felony of the second degree aggravated assault involves a defendant who "attempts
> to cause or intentionally or knowingly causes bodily injury to [a police officer] in
> the performance of duty[.]["]  18 Pa. C.S.A. § 2702 (a)(3).  Because felony of the
> second degree aggravated assault requires intent, rather than recklessness, it
> appears to qualify as a crime of violence.  The upshot of Mr. Washington having
> been convicted of second degree aggravated assault, a less sever[e] offense than
> first degree aggravated assault, is that he qualifies as a career offender, a perverse
> development to say the least.

(<u>Id.</u> at 1-2) (footnote omitted).  At sentencing, counsel also raised the issue when arguing for a

variance:

> Mr. Washington is looking at 30 to life because he's a career offender by virtue of
> [an] aggravated assault conviction.  The members of this community should know

that Mr. Washington was convicted of felony in the second degree aggravated assault which is less serious than felony of the first degree aggravated assault. The members of this community should know that if Mr. Washington had been convicted of felony of the first degree aggravated assault he would not be facing a career offender designation. It is only because he was convicted of a less severe offense of felony second degree aggravated assault which does not have a recklessness component to it is he facing 30 to life.

(Doc. No. 293 at 42:6-21.) And as the Government notes in its Response, the Court considered this when imposing a variance. The Court stated as follows:

We have Guidelines here of 360 months to life. In my opinion those Guidelines are higher than would be necessary to impose a sentence sufficient and -- but not greater than necessary under the circumstances so that a variance is warranted based upon everything I've learned about Mr. Washington's family life and the presence of so many friends and family in court and the support he has and the letters I've received.

. . . .

I note another reason for a variance and that is what Mr. Greenberg has brought to my attention with respect to what the Guidelines would be had Mr. Washington been convicted of first degree aggravated assault[.] [T]he Guidelines would be lower than they are now. Not significantly lower, but lower than they are now, but he was convicted of second degree felony aggravated assault.

(Id. at 67:4-12, 67:24-68:5.) The Court varied below the Guideline range and sentenced Petitioner to a total term of 264 months' imprisonment. (See id. at 68:22-25; see also Doc. No. 287 at 3.)

Based on the above, it is evident that Petitioner's ineffective assistance of counsel claim in Ground Three is without merit. Contrary to Petitioner's assertions, his counsel did challenge the inequities in his career offender designation based on his state aggravated assault conviction, and the Court did take this into account when sentencing Petitioner below the Guideline range. Accordingly, Petitioner's ineffective assistance of counsel claim in Ground Three will be denied.

### 3. Failure to Argue "Sentencing Manipulation" on Appeal

Petitioner's fourth ground for relief alleges ineffective assistance of counsel on the ground that his "attorney fail[ed] to raise 'sentencing manipulation' . . . at any stage post trial." (Doc. No. 400 at 8.) He claims that "the Government['s] conduct in getting a quantity of five kilograms or

more of cocaine[] to secure a mandatory minimum . . . was a clear cut manipulation of the sentencing . . . ."  (Id.)  "[O]nce again," the Government conversely avers that Petitioner "is presenting an issue that in fact his counsel presented earlier."  (Doc. No. 405 at 14.)  "At sentencing, defense counsel argued that the government engaged in sentence manipulation, . . . . [t]he Court denied the effort to eliminate the mandatory minimum," and "counsel raised the issue again on appeal."  (Id.)

This issue was in fact raised at sentencing and on direct appeal.  In the First Supplemental Sentencing Memorandum, Petitioner's counsel challenged the mandatory minimum sentence he faced based on the fictitious quantity of drugs in the stash house sting:

> For this Court to accede to the government's contention that Mr. Washington faces a mandatory minimum sentence of 20 years' incarceration is to give the government unbridled power to unfairly manipulate a defendant's sentencing exposure in reverse sting cases where higher quantities are relevant in inducing the defendant to commit the crime of robbery and not indicative of whether the defendant is really a legitimate drug dealer.
>
> If the reverse sting in this case involved 0.9 kilograms of non-existent cocaine, Mr. Washington would not be facing a mandatory minimum sentence.  If the lure was 4.9 kilograms, Mr. Washington would be facing a mandatory minimum of ten years.  But the ATF agents in this case came up with a figure of ten kilograms undoubtedly to incentivize Mr. Washington and the others to take the bait and agree to commit the robbery. . . . section 851 was designed to punish real drug dealers who are prepared to distribute actual quantities of controlled substances, not defendants like Mr. Washington who may not otherwise have committed the robbery but for law enforcement artificially increasing the quantity of drugs to induce them to do so.
>
> . . . .
>
> [T]he government seeks a guideline range sentence of 30 years to life on Mr. Washington with a floor of 20-years imprisonment in a case where no actual drugs were involved . . . . There is something wrong here and only this Court is in a position to put a stop to it.

(Doc. No. 275 at 2.)  Counsel then raised the issue at sentencing:

> [T]o allow the Government to increase a defendant's sentencing exposure as dramatically as it has in this case and to manipulate the amount of cocaine to attain

that mandatory minimum I think provides the Government with unbridled discretion to manipulate sentences and was not envisioned by Congress to warrant a doubling of the mandatory minimum sentence.

. . . .

The problem in this case and the reason why the Court should not accede to the Government's request to impose a 20 year mandatory minimum sentence is that from soup to nuts this case was a contrived case. And I use that word not in -- in a disparaging way, but also in a factual way. It is dangerous and is reflective of why member -- many members of our community don't feel that the system is fair where you have a situation that the Government can set the bar as to what the mandatory sentence is going to be . . . .

(Doc. No. 293 at 11:22-12:3, 12:25-13:8.) While the Court did acknowledge this argument and imposed a variance on Petitioner's ultimate sentence, it stated that it could not circumvent the statutory mandatory minimum:

Certainly there is a -- there is certainly an aspect here of the Government setting the bar, so to speak, in terms of the -- the amount of cocaine that Mr. Washington thought would be obtained when he engaged in this conspiracy to engage in the robbery of the cocaine.

The Court is bound to follow the law. . . . and the law is that if you have a second conviction for these offenses, conspiracy to -- attempted possession with intent to distribute five kilograms or more of cocaine, the mandatory minimum is 20 years.

The -- the jury so found and set the quantity and I don't see how I have the authority to ignore what the law is and what the jury has said. So at the very least based upon the facts of this case and the charges and what the jury found the Court is bound by the statutory mandatory minimum . . . .

(Id. at 16:15-17:6.)

Petitioner's counsel then raised the issue on direct appeal, arguing that "the District Court erred in following the 20-year mandatory minimum term set forth in 21 U.S.C. § 841(b)(1), which (as applicable here) kicks in when the quantity of cocaine is 5 kilograms or above and the defendant has a prior felony drug conviction." Washington, 869 F.3d at 208. Specifically, Petitioner "contend[ed] that its application in this kind of case, where the comprising elements were entirely

fictitious and in the hands of the government, violate[d] his right to due process." Id.

In Petitioner's appeal, however, the Third Circuit noted that "although [he] did object to the mandatory minimum at sentencing, he argued there on the basis of congressional intent, not due process." Id. Nevertheless, the court addressed the merits of his claim since it "came within a stone's throw" of the argument made at sentencing. Id. The court characterized the argument on direct appeal as "fall[ing] within the broader category of 'outrageous government conduct'— that is, an allegation that the government's conduct was so outrageous that due process and fundamental fairness cannot abide the defendant's conviction." Id. at 209.

In the end, the Third Circuit found that Petitioner "failed to demonstrate, on the facts of this case, that the mandatory minimum should be excised from the indictment." Id. at 210. The court explained:

> Even assuming some impropriety here on the part of the government, most of the factors it created for the crime, and which were within its unique control, were not the drivers of Washington's actual sentence. . . . Instead, the 20-year mandatory minimum was the product of two factors: the 5 kilograms of cocaine charged in the indictment and found by a jury, and the § 851 statement filed by the government. The latter, as the Supreme Court has indicated, is a matter of discretion "similar to the discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect . . . and is appropriate, so long as it is not based upon improper factors." Washington does not argue that the process envisioned by § 851 was not properly followed or was based on impermissible considerations.
>
> So it comes down, in the end, to the drug quantity. Other courts of appeals, however, have roundly rejected claims that amounts greater than 5 kilograms, or even 10 kilograms, amount to sentencing factor manipulation. Further, Agent Edwards testified at trial that the amount chosen for the sting was a "conservative" number based upon the drug weights found in "a typical [Philadelphia] stash house." He explained that the proposed scenario "always has to be realistic" or it might be questioned by the robbery crews. Washington has not offered anything to the contrary. Put simply, there is not enough here for us to conclude that the government chose the 10 kilogram amount primarily, or even secondarily, "to inflate [Washington's] sentence upon a conviction."

Id. at 210-12 (footnotes and citations omitted).  "In sum," the Third Circuit concluded that "the 5 kilograms of cocaine charged in the indictment and found by the jury did not amount to an impermissible manipulation of sentencing factors by the government.  To the extent that the fictitious 10 kilogram quantity is relevant, we find too that Washington has shown neither improper manipulation nor prejudice."  Id. at 213.

For these reasons, Petitioner's ineffective assistance of counsel claim in Ground Four is without merit.  His counsel argued against the mandatory minimum at sentencing based on drug quantity sentencing manipulation and raised the issue on direct appeal as a due process violation.  This Court and the Third Circuit both considered and rejected the arguments.

Accordingly, Petitioner's ineffective assistance of counsel claim in Ground Four will be denied.

### 4.      Failure to Raise Claim of "Outrageous Government Conduct" at Sentencing and on Appeal

Petitioner's fifth ground for relief alleges ineffective assistance of counsel for "attorney failing to raise claim of 'outrageous government conduct'" at sentencing and on direct appeal. (Doc. No. 400 at 13.)  "Petitioner asserts that an indictment may be dismissed by a district court when conduct of the Government violates Due Process."  (Id.)  He contends that his case was "wholly created by the Government, where no drugs or drug dealer existed, and [where he] was charged and convicted of conspiring to possess with intent to distribute the fictitious drugs."  (Id.) He further avers that "he does not think Congress intended to give out mandatory minimums for drugs that do not exist" and his "attorney failed to attack the issue!"  (Id.)

In Response, the Government notes that, as shown in Section IV.B.3, supra, "counsel in fact asserted sentencing factor manipulation both at sentencing and on appeal" and "[t]he Third Circuit explained that 'sentencing factor manipulation' is a due process challenge [that] falls within

the broader category of 'outrageous government conduct.'" (Doc. No. 405 at 16) (quotations omitted) (quoting <u>Washington</u>, 869 F.3d at 209). "And as explained . . . above, the Court of Appeals then rejected the due process challenge to the sentence." (<u>Id.</u> at 17.) Therefore, the Government submits, a "broader due process challenge to the indictment itself would surely fail." (<u>Id.</u>) "[C]ounsel – who unsuccessfully challenged the sentence on due process grounds on appeal – was not ineffective in not broadening the challenge in what would have been a fruitless attempt to seek dismissal of the case." (<u>Id.</u> at 18.)

The cases that the Government cites to support its argument are persuasive. (<u>See</u> <u>id.</u> at 17-18.) In <u>United States v. Fattah</u>, the Third Circuit acknowledged it had "granted relief on a claim of outrageous government misconduct only once" but "has repeatedly distinguished, and even questioned, its holding" ever since. 858 F.3d 801, 813 (3d Cir. 2017) (first citing <u>United States v. Twigg</u>, 588 F.2d 373 (3d Cir. 1978); then citing <u>United States v. Beverly</u>, 723 F.2d 11, 12 (3d Cir. 1983)). Notably, in <u>United States v. Dennis</u>, 826 F.3d 683 (3d Cir. 2016) and <u>United States v. Brooks</u>, 734 F. App'x 120 (3d Cir. 2018), the Third Circuit rejected outrageous government conduct claims in stash house sting cases, where the former involved "defendants . . . prosecuted after responding to a government proposal of robbery of a nonexistent stash house[,]" and the latter involved "one of the targets, not the government, . . . invit[ing] the defendant into the scheme[.]" (Doc. No. 405 at 18) (citing <u>Dennis</u>, 826 F.3d at 694-95; <u>Brooks</u>, 734 F. App'x at 123).[10]

---

[10]  <u>See also</u> <u>United States v. McLean</u>, 85 F. Supp. 3d 825, 839 (E.D. Pa. 2015) (denying a motion to dismiss indictment in a stash house sting case because "the government's conduct in investigating [the defendant] was not outrageous" so as to violate due process); <u>United States v. Graham</u>, No. 12-418-2, 2014 WL 4105978, at *4 (E.D. Pa. Aug. 21, 2014) ("[T]he [c]ourt is not persuaded that the [g]overnment's conduct with respect to the reverse sting operation in this case constitutes the kind of 'shocking, outrageous, and clearly intolerable' conduct necessary to establish the 'extraordinary defense' of outrageous government conduct."); <u>United States v. Whitfield</u>, No. 12-418-1, 2014 WL 12707375, at *1 n.1 (E.D. Pa. July 8, 2014) (denying dismissal of indictment based on outrageous government conduct in a stash house

Because "the unified weight of the decisions within this circuit make clear that the dismissal of an indictment based on outrageous conduct by the government will almost never be supported[,]" United States v. McLean, 85 F. Supp. 3d 825, 839 (E.D. Pa. 2015), this Court is not convinced that counsel was ineffective for failing to argue outrageous government conduct. As stated in Section IV.B, supra, under the Strickland standard for ineffective assistance of counsel, Petitioner must establish that his counsel's performance was deficient and prejudicial. See Strickland, 466 U.S. at 687-88.

Counsel's performance was not deficient. In light of the unsuccessful outrageous government conduct claims in the Third Circuit, especially in stash house sting cases[11] conducted by undercover agents,[12] it was objectively reasonable for counsel to forgo a fruitless argument. Likewise, counsel's performance did not prejudice Petitioner because "there would have been no chance of succeeding [with] such a [claim.]" United States v. Waddy, No. 92-6827, 2003 WL 22429047, at *10 (E.D. Pa. Sept. 18, 2003) (rejecting petitioner's ineffective assistance claim for failure to argue outrageous government conduct because "there would have been no chance of succeeding in such a motion, and the defendant suffered no prejudice for his counsel's failure to do so"); see also United States v. Moffitt, No. 12-147, 2016 WL 7239904, at *5 (W.D. Pa. Dec. 15, 2016) (citation omitted) ("[T]he [c]ourt finds that counsel was not ineffective in failing to raise the rarely-applied, and possibly defunct, outrageousness defense . . . . the [c]ourt will 'not penalize

---

sting case because "the [g]overnment's conduct does not rise to the level of a due process violation").

[11] See supra note 10.

[12] See McLean, 85 F. Supp. 3d at 832 (quoting United States v. Gambino, 788 F.2d 938, 945 n.6 (3d Cir. 1986) ("The Third Circuit has continually 'exercised extreme caution in finding due process violations in undercover settings[.]'").

attorneys for failing to bring novel or long-shot contentions.'"), aff'd, 797 F. App'x 708 (3d Cir. 2020).

Accordingly, Petitioner's ineffective assistance of counsel claim in Ground Five will be denied.

### 5.    Failure to Argue Entrapment Defense at Trial

Petitioner's last ineffective assistance claim is set forth in Ground Six, where he alleges ineffective assistance for "attorney failing to argue an entrapment defense" at trial.  (Doc. No. 400 at 13.)  Petitioner claims that because he "was arrested in a fictitious [stash house] case[,]" he "felt that his best and only defense was to argue entrapment, which [he] expressed to [his] attorney, but [his] attorney failed to do so."  (Id.)  In its Response, the Government submits that Petitioner cannot establish ineffective assistance since "it is apparent that an entrapment defense was untenable." (Doc. No. 405 at 23.)  According to the Government, Petitioner "would have needed to show a prima facie case of both inducement and lack of predisposition, and he could not show either" because "the [G]overnment never solicited [his] involvement" and "evidence of predisposition in the record is overwhelming[.]"  (Id. at 19-20, 23.)  It further avers that trial counsel's decision to pursue other defense strategies fell "within counsel's considerable professional discretion."  (Id. at 23.)  For these reasons, the Government asserts that "trial counsel was not ineffective in failing to present an unviable defense."  (Id.)

Indeed, at trial, the defense has the "burden of production" for both elements of an entrapment defense: "inducement by the government to commit the crime, and the defendant's lack of predisposition to commit the crime."  Dennis, 826 F.3d at 690.  For inducement, the defendant must produce evidence showing "that law enforcement engaged in conduct that takes the form of persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship."  Id. (internal quotations and citations

omitted). Lack of disposition hinges on "whether the accused was ready and willing to commit the crime if any opportunity should be presented[.]" Id. at 692 (quotations omitted).

The Government's reliance on United States v. Dennis in its Response lends support to its argument. In Dennis, the Third Circuit vacated the conviction and sentence of a defendant ensnared in an ATF stash house sting, and remanded for a new trial based, in part, on the district court's error in denying the defendant's request for an entrapment jury instruction. See 826 F.3d at 686. The Third Circuit found that the defendant was entitled to the jury instruction because there was sufficient evidence of inducement and lack of predisposition. See id. at 690-92. Specifically, the court found the ATF confidential informant's central role in "getting [the defendant] to participate in the scheme" coupled with "the substantial financial payoff that was pitched" to the defendant "satisfie[d the defendant's] burden on inducement." Id. at 691. The defendant also showed lack of predisposition through "the absence of robbery or violent crimes in his criminal history; his partially corroborated testimony of turning away three prior opportunities to join [the informant] in robberies; his disavowal of violence on the stand; [and] his testimony that he has not owned a gun in many years[.]" Id. at 692.

Here, the facts in this case contrast the facts in Dennis such that Petitioner could not have successfully produced evidence for both elements of entrapment. Petitioner could not produce evidence of inducement because—as the Government notes in its Response—the Government "never solicited [Petitioner's] involvement at all. To the contrary, [Petitioner] was recruited by [Dwight] Berry, who was ATF's target."[13] (Doc. No. 405 at 19; see also Doc. No. 273 at 2) ("Dwight Berry was the driving force behind this operation. It was Berry who made contact with

---

[13] Moreover, unlike in United States v. Dennis where the defendant was promised a "substantial financial payoff," 826 F.3d 683, 691 (3d Cir. 2016), here Petitioner Washington was told "there would be no money found in the house" they planned to rob. (Doc. No. 280 at 5.)

the informant. It was Berry who recruited [Petitioner] and the others."). Petitioner also would have difficulty producing evidence of lack of predisposition due to the ample, recorded evidence of his overt willingness to participate in the stash house robbery.[14]

Therefore, in light of these facts, it cannot be said that trial counsel was ineffective for failing to raise an entrapment defense. Counsel used his "professionally reasonable judgment[]"[15] in forgoing an untenable entrapment defense and instead advancing a defense strategy focused on Petitioner's lack of "requisite intent to commit a dubious, discriminatory 'conspiracy' that ATF had designed from the ground up." Washington, 869 F.3d at 200. And given the unlikelihood of success on an entrapment defense, trial counsel's performance did not prejudice Petitioner. See Waddy, 2003 WL 22429047, at *8 ("Waddy would simply not be entitled to an entrapment defense and therefore cannot demonstrate the prejudice required to show ineffective assistance of counsel."); United States v. Petrusky, No. 15-461, 2017 WL 9478459, at *3 (E.D. Pa. Sept. 27, 2017) (quotations and citations omitted) ("The prejudice requirement of Strickland requires a 'substantial,' not just 'conceivable,' likelihood of a different result. . . . It follows that counsel cannot be deemed ineffective for failing to raise a meritless claim.").

Accordingly, Petitioner's ineffective assistance of counsel claim in Ground Six will be denied.

---

[14] See Washington, 869 F.3d at 206 ("[W]e agree with the District Court that the evidence admitted at trial against [Petitioner] was daunting and, generally, damning. His recorded statements alone, bluster or not, showed a willing and inquisitive member of the conspiracy. On the day of the robbery itself, [Petitioner] appeared committed to its success.").

[15] Strickland v. Washington, 466 U.S. 668, 699 (1984).

## C.    Sentence Enhancement for Acquitted Conduct

In Ground Seven, Petitioner claims the Court improperly enhanced his sentence by two points for "use of an [sic] violent weapon which Petitioner was aquitted [sic] of." (Doc. No. 400 at 13.)  In its Response, the Government avers that "such an action would be permissible[,]" as "court[s] may premise a guideline enhancement on acquitted conduct that is proven by a preponderance of the evidence." (Doc. No. 405 at 24) (citing United States v. Watts, 519 U.S. 148 (1997) (per curiam); United States v. Ciavarella, 716 F.3d 705, 735-36 (3d Cir. 2013)).  Regardless, the Government notes that, similar to Petitioner's third and fourth grounds for relief,[16] he "overlooks that the Court in fact agreed not to consider the acquitted conduct." (Id.)

The Government's two contentions are correct.  "[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge [to increase the sentence], so long as that conduct has been proved by a preponderance of the evidence." Ciavarella, 716 F.3d at 735-36 (quotations omitted) (quoting Watts, 519 U.S. at 157).  Thus, this Court could have considered the conduct underlying Petitioner's acquitted charge to increase Petitioner's sentence, so long as the Court found the conduct was proven by a preponderance of the evidence.

However, the opposite occurred at Petitioner's sentencing.  As the Government points out in its Response, Petitioner's counsel objected to the two-level sentence enhancement for possession of a dangerous weapon that was listed in Petitioner's presentence report. (See Doc. No. 293 at 8.)  Counsel argued:

> The fact of the matter is [] that it does not affect the offense level and the Guideline range and Mr. Washington was acquitted of that count.  And even by a preponderance of the evidence there was insufficient evidence to connect Mr. Washington to that firearm. . . .

---

[16]    See Sections IV.B.2 and 3, supra.

I think that under all the circumstances of this case it would be appropriate not to include that two level upward enhancement.

(Id. at 8:22-9:9.)  After hearing the Government's rebuttal, the Court agreed with defense counsel:

[T]he jury acquitted [Petitioner] of carrying a firearm in relation to a crime of violence and the Government withdrew the count of him being a convicted felon in possession of a firearm.  And based upon all of the evidence presented at the trial there is a question as to whether he possessed it.  He may have known about the presence of a firearm, but whether he possessed these specific weapons is a question that was raised at trial and from all indications it appeared that the jury did not believe that he possessed it.  He certainly didn't carry it.

So I will find that the preponderance of the evidence standard is not met and that -- not met in this case, so I will ask the -- I will strike the two level enhancement that's noted in paragraph 28 [of the presentence report].  I'll ask the probation officer to make that change in the presentence report.

(Id. at 9:23-10:13.)

As such, Petitioner's claim in Ground Seven is without merit.  Contrary to his assertion, the Court declined to increase his sentence by two levels for his acquitted conduct.  Accordingly, Petitioner's seventh ground for relief will be denied.

### D.    Actual Innocence and Miscarriage of Justice

Petitioner's eighth and final ground for relief is construed as alleging actual innocence.  The entirety of Ground Eight reads as follows:

Miscarriage of justice/procedural fairness/jurisdictional defect, prejudice to excuse procedural default.  Failure to consider the claim will result in a fundamental miscarriage of justice.  Actual innocence claim!

(Doc. No. 400 at 13.)  In its Response, the Government does not address this Ground in full because "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."  (Doc. No. 405 at 4 n.1) (quotations omitted) (quoting Thomas, 221 F.3d at 437).  While Ground Eight is an amalgam of short, conclusory statements, the Court will briefly address it in the interest of judicial economy.

Petitioner appears to claim actual innocence while also asking the Court to consider his claim through the miscarriage of justice exception.  As explained in Section IV.A, <u>supra</u>, claims that are not raised on direct appeal are considered procedurally defaulted "and cannot be collaterally reviewed pursuant to § 2255, unless the [petitioner] can show cause for his default and actual prejudice . . . ."  <u>Fahey</u>, 2002 WL 1302262, at *1 (citing <u>Davis</u>, 411 U.S. at 243-45).  "If the [petitioner] cannot show cause, the failure to raise a claim . . . may be excused if he can show that a fundamental miscarriage of justice would result from a failure to entertain his claim."  <u>United States v. Roman</u>, 938 F. Supp. 288, 292 (E.D. Pa. 1996).  "The fundamental miscarriage of justice exception is limited to cases of 'actual innocence.'"  <u>Id.</u> (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995)).

"Neither the Supreme Court nor our Court of Appeals have decided whether 'actual innocence' is a freestanding, cognizable claim for relief under § 2255."  <u>United States v. Schwartz</u>, 925 F. Supp. 2d 663, 694 n.22 (E.D. Pa. 2013).  Nevertheless, "[t]he Supreme Court has made it plain that 'actual innocence' means factual innocence, not mere legal insufficiency."  <u>Id.</u> at 694 (quotations omitted) (quoting <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998)).  In order to demonstrate actual innocence, the petitioner "must present new, reliable evidence that was not presented at trial."  <u>Suggs v. United States</u>, No. 14-349-2, 2018 WL 6065411, at *8 (E.D. Pa. Nov. 20, 2018) (quoting <u>Houck v. Stickman</u>, 625 F.3d 88, 93 (3d Cir. 2010)).

Here, as shown above, Petitioner's eighth ground for relief only uses the words: "actual innocence claim!"  (Doc. No. 400 at 13.)  He does not alert the Court to the existence of new evidence, nor does he attach any documents or exhibits to his Motion showing new evidence. Therefore, his one statement, without more, is insufficient to prove actual innocence.  Accordingly, Petitioner's eighth ground for relief will be denied.

## V.  CONCLUSION

For the foregoing reasons, Petitioner's claims are meritless and will be denied without an evidentiary hearing.  When a court issues a final Order denying a § 2255 motion, the court must also decide whether to issue or deny a certificate of appealability.  <u>See</u> 28 U.S.C. § 2255; Fed. R. Crim. P. 11(a).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  § 2253(c)(2).  The Court will not issue a certificate of appealability in this case because Petitioner failed to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 400) will be denied.  The Court will not hold an evidentiary hearing.  A certificate of appealability will not be issued.  An appropriate Order follows.